UNITED STATES of· America, Plaintiff,

v.

Clyde DINNELL, Defendant.

No. CR 26–247–PHX.

United States District Court,
D. Phoenix.

March 17, 1977.

William C. Smitherman, U. S. Atty., Michael B. Scott, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff.

Bruce I. Hochman, Hochman, Salkin & DeRoy, Los Angeles, Cal., for defendant.

## FINDINGS OF FACT

RUSSELL E. SMITH, Chief Judge.*

The case was tried to the court sitting without a jury pursuant to a stipulation of the parties.

Defendant was indicted on three counts. Count III was dismissed on motion of the United States. Counts I and II charged violations of 26 U.S.C. § 7206(1), alleging that defendant's gross income was understated in the 1971 return in the amount of $46,350.00 and in the 1972 return in the amount of $52,229.00. Taxpayer reported on a cash basis and signed the returns, both of which stated that they were made under penalties of perjury.

■ I find that the gross income was understated in a substantial amount on the income tax returns for the years 1971 and 1972. Defendant was paid by Combined Equity Assurance Company and Pyramid Planners Assurance Company [1] (hereafter Company), the sum of $58,500.00 in 1971

---

\* Sitting in the District of Arizona by designation.

1. Combined Equity Assurance Company changed its name to Pyramid Planners Assurance Company.

and the sum of $57,465.00 in 1972, and that in those years he reported gross income in the amounts of $12,150.00 and $5,236.00 respectively.

In the year 1971 defendant, on line 1 of Schedule C, reported gross receipts of $12,-150.00 and took deductions in the amount of $3,608.00. The resulting amount of $8,442.00 was carried forward on lines 15, 16, and 18 of the face sheet. In 1972, on line 11 of the face sheet, defendant reported wages in the amount of $5,236.00.

■ It is defendant's position that under 26 U.S.C. § 7206(1) the Government's burden of proof is not satisfied by proof that certain amounts of money were received, but that the Government must go further and prove that the money received was income; in other words, that it is the Government's burden and not the defendant's to negate the possibility that money received was a loan or some other form of nontaxable income. I agree that the Government must prove that the money received by a taxpayer was part of his gross income. In a case where it is charged that the defendant falsely stated his gross income, it is not, however, necessary for the Government to prove what his adjusted gross income, or taxable income, was.

It is suggested that some of the monies received by the defendant in 1971 and 1972 were received as advances to be applied on commissions to be earned in the future and that such advances were loans and not income. It is alternatively suggested that the defendant, out of money received by him, paid business expenses.

The witness Schallman, who hired defendant, said that it was agreed that the defendant would be paid $1,500.00 per week as an independent contractor for his consulting services. As Schallman put it: "Mr. Dinnell said he wanted $1500.00 a week, and he would take care of everything and run the business for us." TR p. 15. Schallman said that defendant was to pay some expenses out of that amount (a matter to be considered later). He was, in fact, with some exceptions, paid $1,500.00 per week.

Schallman testified that the money paid was not an advance against commissions to be earned at some future time. The books of the Company show no loans to it by defendant in 1971 or 1972.

At the close of the Government's case, the evidence was sufficient to warrant a finding that the amounts received by defendant were gross income. The evidence submitted by defendant proved that the understatement of income in 1971 and 1972 could not be accounted for by loans or advances. Defendant's expert reconstructed the defendant's account with the company, and by crediting defendant with checks in the amount of $10,182.55 drawn by defendant in favor of third persons, which checks were not shown on the Company books (it was not shown that the checks were ever reported to the Company accountants), found that as of the end of 1972 the Company owed defendant $10,182.55. If this money was in fact spent by defendant for Company purposes, and the Company did in fact owe defendant $10,182.55 at the end of 1972, that amount was not sufficient to account for the amounts of the understatement in either of the tax years in question.

For two reasons I find that the defendant's claim of business expense does not constitute a defense.

First: The fact (if it was a fact) that money received by defendant was used by him for expenses might bear upon the question of intent but would not alter the fact that the amounts of gross income or receipts received were falsely stated. The income tax laws contemplate that the gross amount of income received be reported and that the deductions claimed be separately stated. Thus, in the form used in 1971, gross receipts were to be shown on line 1 of Schedule C and business expense deductions were to be claimed in line 24 and explained in Schedule C–1. In the defendant's 1972 return, gross receipts were shown as $12,-150.00 and deductions were claimed in the amount of $3,608.00. Whether the business deductions were understated or not, the $12,150.00 figure was false. In 1972 wages

in the amount of $5,236.00 were shown and no deductions were claimed. The forms used clearly contemplate that the total compensation be shown on line 11 of the face sheet and that any employee business expense be shown on line 4 of page 2 of the return. If defendant did have expense not shown, still the amount that was shown in line 11 of the face sheet was false.

Second: I find that the claim of business expenses is not sufficient to account for any substantial part of the understatement of gross income in either 1971 or 1972.

■ In 1971 defendant claimed business expenses in the amount of $3,608.00. In the year 1972 he claimed no such expenses. Statements made in an income tax return constitute admissions. The statement of a taxpayer that his business expense in a given year is X dollars constitutes an admission that X dollars was the amount of the allowable business deduction. *United States v. Hornstein,* 176 F.2d 217 (7th Cir. 1949). Since every taxpayer seeks to minimize taxes[2], a failure to claim business expenses in a tax form which provides a schedule for the deduction of business expenses warrants an inference that there are none. These admissions were sufficient to satisfy the Government's burden of proof.

While defendant testified to substantial business expenses, he gave no detail where some detail might have been given. He produced no receipts. I did not believe him.

Defendant claims that he acted in good faith, that he knew nothing about taxes and that the Company accountants who prepared his tax returns suggested the amounts of gross income and the deduction which he should report. In this he was contradicted by the accountants and by his secretary who prepared one of the returns. I believed them.

■ Defendant further claims that the Company did not furnish him with a Form 1099 (the form upon which his income as an independent contractor would be reported),

and that he was misled by this. He did know that it was agreed that he should receive $1,500.00 per week, and he did know that he did receive $1,500.00 in most weeks. The lack of a Form 1099 could not have led him to believe that his gross receipts in 1971 were $12,150.00.

■ Defendant likewise claims that the W-2 Form furnished by the Company in 1972, showing wages in the amount of $5,236.00, misled him. Defendant had borrowed money from Arizona Diamond Brokers. At defendant's request, one Rubin, the Company's accountant, paid Arizona Diamond Brokers and secured an assignment of the note and the security. As part of the transaction, Rubin secured from defendant a document authorizing the Company to pay Rubin the sum of $250.00 per week. The document read in part:

Re: Authorization to deduct $250.00 each week—beginning October 8, 1971 from my drawings, salary or any other compensation, etc.

Please remit the aforementioned $250.00 each week to Emanuel Rubin. Said $250.00 each week is being applied toward loans that I have obtained from Emanuel Rubin. This authorization cannot be changed without the written approval of Emanuel Rubin. Ex. 10D

For some reason, perhaps because Rubin wanted no quarrels with the Internal Revenue Service about his $250.00 per week, the amount of $250.00 per week, together with the amount of the withholdings on that amount, were shown on the books as wages. The W-2 Form furnished disclosed these amounts. Defendant knew what was being done; he knew that the assignment to Rubin was a partial assignment; and he knew that he was receiving the remainder of the $1,500.00 per week. He was not deceived by the W-2 Form.

I find that the defendant wilfully understated the amounts of his gross income for the purpose of evading a part of the tax owed by him.

2. *Cf. Knutson v. Daily Review, Inc.,* 548 F.2d 795 (9th Cir. 1976).

Defendant's entire method of operation was indicative of fraud. He dealt in large amounts of money, but none of it ever appeared in a bank account in his name. At one time he caused his checks to be placed in his secretary's account. She then paid his personal bills and gave him cash. At other times his salary was paid to his nominees, American Royal Investments, C. D. Consultants, and C. D. Productions. These were nothing more than fictitious names. Apparently no property was held by defendant in his own name. He drove a leased Cadillac. The expensive home in which he lived was placed in his son's name.

I find the defendant guilty of the crimes charged in Counts I and II of the indictment.