HOVEY & Another, Appellants, *v.* McDONALD & Another.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued October 10th, 1883.—Decided November 5th, 1883.

*Amendment— Appeal—District of Columbia—Equity—Execution—Injunction —Practice—Receiver—Supersedeas.*

A, being entitled to a fund in the hands of the agent of Great Britain before the Mixed Claims Commission of 1873, B, his assignee in bankruptcy, filed

a bill against him and C (C claiming the fund as purchaser), to restrain them from collecting the money. A restraining order first, and then a preliminary injunction were issued. D was then appointed receiver of the fund. Meanwhile E commenced suit in the same court against A and C, claiming one-fourth of the fund, and obtained preliminary injunction restraining them from collecting more than three-fourths. Subsequently an order was made in B's suit in which, after reciting that it was made by consent of parties in both suits, both restraining orders were vacated, payment of one-half of the fund was ordered to C discharged of claims of the plaintiffs in either suit, and the payment of the other half was ordered to D, and D was directed to hold it subject to the claims of B and E. This decree was carried out. Both bills were demurred to, and in each suit decree of dismissal was entered at special term on the demurrer. In B's suit appeal was taken and the decree was affirmed. In E's suit, the decree of dismissal was entered on the 24th June, 1875, and an appeal was taken on the same day. On the 28th of the same June the decree was amended by adding an order that the receiver pay the fund to C, and notice thereof was at once given to the receiver with demand of payment. The receiver repaired to court, and asked the court what he should do. The court directed him to obey the decree. He then surrendered the fund to C. E's appeal was perfected on the 12th July by filing an appeal bond. Judgment was reversed on appeal, and an order entered that the receiver should pay the money into court. Failing to do this, he was adjudged in contempt, and an order issued for an accounting. The auditor took testimony and returned it with a report that the receiver had done his duty in paying the money to C. This report being confirmed, an appeal was taken from that decree. The receiver moved to dismiss the appeal, on the ground that he was not party to the suit. *Held,*

1. That though the receiver was not party to the suit, he was principal party to a side issue which had arisen in it, which was appealable, and that the judgment upon it was final, and the appeal was properly taken.
2. That under the rules and practice of the Supreme Court of the District of Columbia, the suspensive force of the appeal in E's case was not operative until the filing of the bond.
3. That the completing of the decree in that suit by amendment on the 28th June was within the power of the special term.
4. That these proceedings against the receiver being in equity, are not governed by the rules regulating a *supersedeas* of execution.
5. That a decree in equity dissolving an injunction is not affected by a supersedeas, unless the court below order the continuance of the injunction pending appeal. Whether that should not have been done in this case—*Quaere.*

The facts are fully stated in the opinion of the court.

*Mr. Chas. W. Hornor* and *Mr. G. F. Edmunds* for the appellants.

*Mr. Conway Robinson* for the receiver.

Mr. Justice Bradley delivered the opinion of the court.

An award against the United States of nearly $200,000 having been made to one A. R. McDonald, a British subject, by the mixed commission appointed under the treaty of 1871, his bankrupt assignee, Thomas J. Phelps, filed a bill in the Supreme Court of the District of Columbia to restrain him from collecting the money, and to have it made subject to his debts, making one White also a defendant, who claimed to have purchased the claim. A restraining order, and subsequently a preliminary injunction, was granted according to the prayer of the bill, and George. W. Riggs was appointed a receiver to collect and hold the money until the further order of the court. In the meantime a bill was filed by Charles E. Hovey and William Dole (the present appellants) against McDonald and White, setting up a lien upon one-fourth of the fund under an alleged agreement by which they were to receive that proportion as compensation for their services in aiding the prosecution of the claim, and praying that the lien might be established, and that the defendants might be enjoined from collecting or receiving more than three-fourths of the award. A preliminary injunction was also granted in accordance with the prayer of this bill. On the 16th of February, 1875, the following consent decree, or order, was made, to wit:

"In the Supreme Court of the District of Columbia,

"Thomas J. Phelps, Assignee,
            *vs.*
Augustine R. McDonald and William White. } In Equity. No. 3,910.

"This cause came on to be further heard on this 16th day of February, a. d. 1875 ; and thereupon, and upon consideration thereof, and with the consent of the parties to this suit, and of Charles E. Hovey and William P. Dole, parties complainant in a certain cause in equity in this court, numbered 3,937, against the same defendants, and claiming one-fourth of the award in the proceedings mentioned,

"It is, this 16th day of February, a. d. 1875, ordered, adjudged, and decreed—

" 1. That the restraining orders heretofore made in both said causes are hereby vacated.

" 2. That the decree. made in this. cause on the 28th day of December, A. D. 1874, appointing. George W. Riggs, Esq., receiver, and granting a provisional injunction, is modified as follows, viz.: That the defendant William White may receive from the agents of the British government the one-half of the net amount of the award in the proceedings mentioned, free and discharged of all claims of the plaintiffs in both the causes above mentioned, to enable the said defendant to pay the expenses incurred by the defendant A. R. McDonald .in the prosecution of this claim ; which sum of one-half of said award the court finds to be the reasonable expense incident to the prosecution of the said claim by said defendant A. R. McDonald before said Mixed Commission, exclusive of said claim of Hovey and Dole.

" 3. That the remaining half the net amount of said award shall be paid to the said George W. Riggs ; and it is ordered, adjudged and decreed that the defendants shall execute all such orders, receipts and acquittances necessary to enable the said George W. Riggs to collect the same. And the said George W. Riggs shall hold the said half of the said award subject to the claims, liens, and rights of the said Charles E. Hovey and William P. Dole, and of the plaintiff in this cause, to be determined by the further decree of this court in this cause and in the cause of said Hovey and Dole hereinbefore mentioned. It is further ordered that said receiver be directed to invest the money so placed in his hands in bonds of the United States or in $3\frac{65}{100}$ bonds of the District of Columbia guaranteed by the United States, as he may deem best for the interest of the parties concerned, and that a copy of this decree be filed in the last-mentioned cause."

This decree was carried out ; the money was collected from the agent of the British government, one-half of it being received by Mr. Riggs as receiver, and the suits progressed in due course. Both bills were demurred to, and both demurrers were sustained, and the bills dismissed by the court in special term.

In the case of Hovey and Dole a decree was entered on Thursday, the 24th of June, 1875, simply decreeing that the

demurrer to the bill be sustained, and that the bill be dismissed with costs. An appeal to the general term was entered the same day on the minutes of the court.

On Monday, the 28th of June, 1875, the decree was amended by adding thereto, the clause, "that the receiver appointed in this cause, and in *Phelps, assignee,* v. *McDonald and White,* No. 3,910, be directed to pay the funds belonging to said cause to the said defendants, McDonald and White, or order, and thereon said receiver shall be discharged;" and at the same time a decree was entered in the suit of Phelps, assignee, that the demurrer be sustained, and the bill dismissed with costs, and the same direction was given to the receiver to deliver the funds to McDonald and White. An appeal was entered in this case also, on the day the decree was rendered; but no appeal bond or undertaking was filed in either case until the 12th of July.

Soon after the entry of the last decree, and on the same day, a copy of it was served on the receiver by the attorney of McDonald and White, and the fund in his hands, then consisting of District bonds, was demanded of him: but before he delivered the bonds, the attorney of Hovey and Dole appeared and gave him verbal notice that an appeal had been taken, and insisted that it was a supersedeas of the decree. Thereupon, the receiver and the attorneys repaired to the court, and the receiver asked the judge what he should do, and was simply told to obey the decree—the complainants' attorney, at the same time, offering to furnish the security named by the court on the appeal. The receiver then delivered the bonds to the defendants.

In the case of Phelps, the bankrupt assignee, the decree of the special term was afterward affirmed; but in that of Hovey and Dole the decree of the special term was reversed, and the counsel for the complainants obtained an order on the defendants to pay back into court the money, or funds, which they had obtained from the receiver. Failing to do this, they were adjudged in contempt, and a decree *pro confesso* was entered against them. Thereupon the complainants obtained an order on the receiver to file his account; and this being done, and it

appearing thereby that, in obedience to the decree of the special term, he had delivered the fund to the defendants, the account was referred to an auditor, and the complainants filed exceptions thereto on the ground that he had delivered up the funds without due authority. The auditor took testimony as to the circumstances of the appeal, the notice given to the receiver, and his conduct in the matter, and reported that in his opinion the receiver had only done his duty. This report was confirmed by a decree of the general term, and from that decree the present appeal was taken.

The first matter to be determined is the motion on the part of the receiver to dismiss the appeal for the reason that he was not a party to the suit. This motion cannot prevail. The proceedings instituted by the order requiring the receiver to file his account, and the subsequent reference of that account to an auditor, and the exceptions thereto, were all directed against the receiver for the purpose of rendering him personally responsible for the fund which had been placed in his hands, and which he had delivered over in obedience to the original decree. It was a side issue in the cause, in which the complainants on the one side, and the receiver on the other, were real and interested parties. The decree confirming the auditor's report was, as to this matter, a final decree against the complainants and in favor of the receiver. We have so often considered cases of this sort, arising incidentally in a cause, but presenting independent issues to be determined between the parties to them, that it is unnecessary to enter into a detailed discussion of the subject at this time. The receiver, though not a party in the principal suit, was an officer of the court appointed in the suit, and was a principal party to the particular question raised by the proceedings referred to. It is only necessary to refer to some of the cases that apply to the subject. It will be found fully discussed in *Blossom* v. *Milwaukee Railroad Company*, 1 Wall. 655; *Butterfield* v. *Usher*, 91 U. S. 246; *Trustees* v. *Greenough*, 105 U. S. 527; and *Hinckley* v. *Gilman, Clinton and Springfield Railroad Company*, 94 U. S. 467. In the case last cited a decree was rendered against a receiver, directing him to pay into court a certain sum of money, being the

balance found due from him on the settlement of his accounts. He appealed from this decree, and his right to appeal was sustained by this court. This case is a direct authority to show that the receiver in the present case, had the decree been against him, could have taken an appeal; and, if he would have had a right to appeal, surely the opposite parties have the same right.

We are brought, then, to consider the effect of the appeal taken from the decree of the special term upon the efficacy of said decree as a justification of the receiver in handing over to the defendants the fund in his possession. To arrive at a satisfactory conclusion, it will be necessary, in the first place, to take notice of the question as to the power of the court in special term to amend its decree after the appeal was entered.

By the laws relating to the District of Columbia, the Supreme Court of the District has general terms and special terms, the latter being held by a single judge, and proceeding in the conduct of causes as if it were a separate court. Rev. Stat. D. C., § 753. The special term renders final judgments and decrees; and any party aggrieved by an order, judgment, or decree of the special term, if the merits are involved, may appeal to the general term. § 772. The court in general term is authorized to adopt rules to regulate the time and manner of making appeals, and to prescribe the terms and conditions upon which they may be made. § 770. Such rules have been adopted. One is, that executions may issue after judgment in special term, unless the party condemned move to vacate it, or set it aside for fraud, deceit, surprise, or irregularity, or resort to a review of it before the general term. Rule 89. Another is, that appeals must be brought within thirty days after the judgment or decree is made or pronounced; and that they shall not stay execution (as between private parties) where the judgment is for a specific sum, unless, within twenty days after judgment or decree, an undertaking be given, with security, to abide by, perform, and pay the judgment or decree. Rule 91.

We do not perceive that there is anything peculiar in these appeals from the special to the general term to take them out of the operation of the general principles and rules which gov-

ern appeals from one court to another. One general rule in all cases (subject, however, to some qualifications) is that an appeal suspends the power of the court below to proceed further in the cause. This includes a suspension of the power to execute the judgment or decree. But, of course, besides merely taking an appeal, those additional things must be done which the law requires to be done, in order to give to the appeal a suspensive effect, whether it be security for the payment of the claim or other condition imposed by law.

One of the qualifications of the general rule as to the suspensive effect of an appeal is, that the inferior court may perfect its judgment or decree, usually at any time during the term at which it is rendered. If, when an appeal is taken or a writ of error is sued out, the record has not been made up, it may be made up in due form. If any obvious mistake has occurred, it may be corrected; as where the jury by mistake has given damages in a penal action, or has given damages for a larger sum than the declaration demanded, the plaintiff may enter a remittitur of the damages on the record, after a writ of error is brought. Tidd's Pract. 942. And it is laid down as a general rule, at law (the principle of which is equally applicable to chancery proceedings), that those things which are amendable before error brought, are amendable afterwards, so long as diminution may be alleged and certiorari awarded—provided, of course, that the time for amendment has not passed by. Tidd, 714. In chancery proceedings it is a rule that when a clerical error has crept into the decree, or some ordinary direction has been omitted, the court will entertain an application to rectify it, even though it has been passed and entered. Where a decree has omitted a direction that is of course at the time it is made, it may be corrected by the insertion of that direction; as where, in a creditor's suit, the decree has omitted the usual direction to take an account of the personal estate, it was ordered to be inserted. Daniell's Ch. Pr., chap. XXV., sect. V. This rule is formulated in the 8th Equity Rule established by this court for the government of the circuit courts, which declares that "clerical mistakes in decrees, or decretal orders, or errors arising from any accidental slip or omission,

may, at any time before an actual enrolment thereof, be corrected by order of the court or judge thereof, upon petition, without the form or expense of a rehearing." Such corrections, by analogy to the practice in cases at law, may undoubtedly be made after an appeal is taken.

In the present case, the correction of the form of the decree, by adding the direction to the receiver to pay over the money in his hands to the defendants, was a thing of course; it was merely expressing the legal effect and consequence of the decree. It was an amendment which the court below (the special term) was competent to make notwithstanding the appeal. The terms of the injunction were that the defendants should be restrained from receiving the money until the final hearing of the cause. Of course, when the cause was finally heard, and the bill dismissed, the injunction ceased to have effect by its own terms. The appointment of Mr. Riggs as receiver was for the purpose of holding the money as agent of the court, and withholding it from the defendants until the decision. The words of his commission were, "to collect and hold the money until and subject to the further order of the court." It was therefore a necessary consequence of the decree of dismissal, that the injunction should be dissolved, and that the receiver should be discharged and directed no longer to withhold the money from the possession of the defendants. The dissolution of the injunction, and the discharge of the receiver were directions of course to be inserted in the decree of dismissal, unless the court should affirmatively order otherwise. The court below, it is true, in view of the appeal, might have made an order to continue the injunction and to retain the property in the receiver's hands; but that was a matter of discretion, to be exercised according to the justice of the case. If the judge did not see fit to exercise it, it was of course to add to the decree of dismissal its legal effect and consequence. The making of the correction without notice to the complainants, if such notice was requisite, was an irregularity of which the receiver was not bound to know. We are of opinion, therefore, that the completion of the decree on the 28th of June, by adding the usual direction, was within the power of the special

term; and the rights of the parties to this appeal must be determined as if the decree had originally contained that direction.

This brings us to the question of the effect of the appeal as a supersedeas, or as a suspension of the decree thus corrected. The appeal was taken in time, and verbal notice that it had been taken and would be followed up by the proper undertaking was given to the receiver at once, before he had parted with the funds in his hands. At the same time he was served with a copy of the decree ordering him to deliver those funds to the defendants. The question is whether, under these circumstances, he paid the money in his own wrong, notwithstanding the order of the court.

A supersedeas, properly so called, is a suspension of the power of the court below to issue an execution on the judgment or decree appealed from; or, if a writ of execution has issued, it is a prohibition emanating from the court of appeal against the execution of the writ. It operates from the time of the completion of those acts which are requisite to call it into existence. If, before those acts are performed, an execution has been lawfully issued, a writ of supersedeas directed to the officer holding it will be necessary; but if the writ of execution has been not only lawfully issued, but actually executed, there is no remedy until the appellate proceedings are ended, when, if the judgment or decree be reversed, a writ of restitution will be awarded. To remedy the inconveniences that arose from an immediate issue of execution before the appellate proceedings could be perfected, the original judiciary act of 1789 provided, and the present Revised Statutes now provide, that no execution shall issue upon judgments in the courts of the United States, where a writ of error may be a supersedeas, until the expiration of ten days after the judgment. R. S. 1007. This regulation applies to proceedings in equity as well as to cases at law. But it does not extend to the present case. The regulation of appeals from the special to the general term of the Supreme Court of the District is specially provided for in the laws and rules before referred to, which cover the whole subject. By these rules it is declared that, after judgment is

entered in the circuit court, or at a special term, execution may be issued, unless the party condemned moved to vacate or set it aside, or resort to a review of it before the general term: but no appeal shall operate as a stay of execution where the judgment is for a specific sum of money, unless the appellant, with surety, within twenty days after the judgment or decree, execute and file an undertaking in the form prescribed. The appellants insist that this rule makes it unlawful to issue an execution within the twenty days. We doubt very much whether that is the true meaning of the rule. It would be more in accordance with the general mode of construing such regulations to hold that the supersedeas does not take effect until the condition is complied with, and will not take effect at all unless complied with during the time limited.

But this case is not within the terms of the rule. There was no decree for a specific sum of money; there was no decree at all in favor of the complainants; and no execution was applicable to, or could be issued in the case, except an execution for the costs of the defendants. The truth is, that the case is not governed by the ordinary rules that relate to a supersedeas of execution, but by those principles and rules which relate to chancery proceedings exclusively. It depends upon the effect which, according to the principles and usages of a court of equity, an appeal has upon the proceedings and decree of the court appealed from, and the doctrines which apply to a supersedeas can only be brought in by way of analogy.

In England, until the year 1772, an appeal from a decree or order in chancery suspended all proceedings; but since that time a contrary rule has prevailed there. The subject was reviewed by the House of Lords in 1807, and an order was made establishing the right of the chancellor to determine whether and how far an appeal should be suspensive of proceedings; subject to the order of the House on the same subject. See Palmer's Pract. H. L. 9, 10; 15 Vesey, 184; 3 Paige, 383–385.

In this country the matter is usually regulated by statute or rules of court, and generally speaking an appeal, upon giving the security required by law (when security is required), sus-

pends further proceedings, and operates as a supersedeas of execution. This, as we have seen, is the case in the circuit courts of the United States. But the decree itself, without further proceedings, may have an intrinsic effect which can only be suspended by an affirmative order, either of the court which makes the decree, or of the appellate tribunal. This court, in the *Slaughter-House Cases*, 10 Wall. 273, decided that an appeal from a decree granting, refusing or dissolving an injunction, does not disturb its operative effect. Mr. Justice Clifford, delivering the opinion of the court, said " it is quite certain that neither an injunction nor a decree dissolving an injunction passed in a circuit court is reversed or nullified by an appeal or writ of error before the cause is heard in this court ; " and held that the same rule applies to writs of error from State courts in equity proceedings ; and the decision of the court was based upon that view of the law. It was decided that neither a decree for an injunction nor a decree dissolving an injunction was suspended in its effect by the writ of error, though all the requisites for a supersedeas were complied with. It was not decided that the court below had no power, if the purposes of justice required it, to order a continuance of the *status quo* until a decision should be made by the appellate court, or until that court should order the contrary. This power undoubtedly exists, and should always be exercised when any irremediable injury may result from the effect of the decree as rendered ; but it is a discretionary power, and its exercise or non-exercise is not an appealable matter. In recognition of this power, and for the purpose of facilitating its proper exercise in certain cases, on appeals from the circuit courts, this court by an additional rule of practice in equity, adopted in October term, 1878, declared that,

" When an appeal from a final decree, in an equity suit, granting or dissolving an injunction, is allowed by a justice or judge who took part in the decision of the cause, he may, in his discretion, at the time of such allowance, make an order suspending or modifying the injunction during the pendency of the appeal upon such terms as to bond or otherwise as he may consider proper for the security of the rights of the opposite party." Rule 93

Of course, where the power is not exercised by the court, nor by the judge who allows the appeal, the decree retains its intrinsic force and effect.

Applying these principles to the present case, it is clear that the force of the decree was not affected by the appeal, although it was in the power of the special term to have continued the injunction and to have retained the fund in its control in the hands of the receiver had it seen fit to do so. Judging only from what appears in the record, we cannot refrain from saying that, in this case, the latter course would have been eminently proper. It would have protected all parties and produced injury to none. But if the court failed to do what it might properly have done, such failure ought not to be visited upon the receiver, who was the mere instrument and hand of the court, and subject to its order. It was his duty to obey the decree as made.

This disposes of the case, and requires that the decree appealed from should be affirmed,—

*And it is so ordered.*