**In re Joseph P. WYMER, Jr., Debtor.**

**Joseph P. WYMER, Jr., Defendant-Appellant,**

**v.**

**Rhonda B. WYMER, Plaintiff-Appellee.**

**BAP No. 80–0001.**
**Bankruptcy No. 79–23464–WH.**
**Adv. No. 79–0008.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

May 27, 1980.

Concurring Opinion June 16, 1980.

---

forcement of the judgment pending appeal. Having reexamined the record and reviewed applicable law, we conclude that by granting the second stay the panel departed from fundamental principles of appellate review and unnecessarily assumed responsibilities that ordinarily are reserved to the trial court.

Accordingly, we now vacate that order on the ground that appellant has failed to demonstrate any abuse of discretion by the trial judge and on the further ground that he failed to show that he was unable to obtain relief from the trial judge.

Termination of the stay of enforcement is postponed 10 days from entry of this order to permit appellant, if he choses, to post a supersedeas bond of $12,500 as previously approved by the trial judge.

Appellant has deposited $3500 with the clerk of the bankruptcy court as a condition of the stay that is now being vacated. These funds are to remain on deposit, subject to such disposition as the trial court in its discretion shall order.

Nothing in this order should be read as limiting the trial court's discretion to modify the amount of the supersedeas bond, or to fashion an alternative bond involving proceeds of an execution sale.

## I.

### Background

A state court judgment was entered in favor of appellee creditor against appellant debtor in 1974. A writ of execution was issued on that judgment in the amount of $8146.05 on September 26, 1979. Thereafter, on October 29, 1979, the Marshal of San Bernardino County seized four motor vehicles belonging to debtor.

Debtor moved the state court unsuccessfully on November 9, 1979, to claim the vehicles exempt and to quash the writ. Four days later he filed bankruptcy, effectively staying the execution sale. In early December, creditor appellee commenced an action to determine the dischargeability of the state court judgment. Trial concluded

Raymond P. Van Stockum, Jones & Pittullo, P. C., Upland, Cal., for appellant.

Stephen M. Shirley, Shirley, Johnson & Shirley, Pomona, Cal., for appellee.

## OPINION AND ORDER

Before KATZ, GEORGE and HUGHES, Bankruptcy Judges.

HUGHES, Bankruptcy Judge.

Appellant has obtained two orders from this panel, the first specifically staying an execution sale scheduled for the following day and the second generally staying en-

on January 16, 1980, and a judgment holding the state court judgment nondischargeable was entered by Judge William H. Hyer on January 22, 1980. This judgment was appealed and is pending before this panel.

On or about January 22, debtor filed a motion for stay of judgment pending appeal, as well as the notice of appeal. On January 31, 1980, the trial judge accepted the stipulation of the parties and fixed the amount of the supersedeas bond at $12,500.

The bond was not posted. However, on February 25, 1980, appellant brought an emergency motion to this panel in which he prayed "that the Bankruptcy Appellate Panel issue a stay order halting the sale scheduled by the Marshal, San Bernardino County, California, for 10:00 a. m. on February 26, 1980." In presenting the motion to this panel, debtor alleged that the "grounds for this emergency motion were presented to the Honorable David Naugle in the absence of Judge Hyer on Friday, February 22, 1980, at which time Judge Naugle denied the motion."

We granted relief and the Marshal's sale was cancelled. On the afternoon of February 26, the panel heard arguments of counsel by conference telephone call and granted a stay pending appeal on condition appellant post a $3500 supersedeas bond. That order, dated February 28 and filed March 3, is the subject of this memorandum.

## II.

### Stays Pending Appeal

Federal courts (whether trial or appellate) have statutory or inherent power to stay judgments and orders pending appeal. All Writs Act, 28 U.S.C. § 1651; 11 *Wright & Miller* pp. 331–32.

The propriety of a stay order, however, depends on rules of procedure and judicially established standards. Of primary consideration are Rules 62(a), (c), (d) and (g) of the Federal Rules of Civil Procedure, Rules 7 and 8(a) and (b) of the Federal Rules of Appellate Procedure and Rule 805 of the Federal Rules of Bankruptcy Procedure.

The various rules and standards taken together, establish three types of stays, one that issues as a matter of right, another that is discretionary and a third that combines features of the first two.

The matter-of-right stay is confined largely to money judgments and is often known as the supersedeas stay because of reference to the supersedeas bond in FRCP 62(d). Supersedeas, the bond that supercedes the right of enforcement, has no universal meaning. In the federal system, a "true supersedeas operates only as to a money judgment from which a writ of execution can issue." *Hovey v. McDonald*, 109 U.S. 150, 3 S.Ct. 136, 27 L.Ed. 888 (1883). But the term is sometimes used with reference to stays of non-money judgments on appeal. See, e. g., *City of Shelbyville v. Glover*, 184 F. 234, 240 (6th Cir. 1910). In California, supersedeas has had the opposite meaning, namely discretionary stays of non-money judgments. See generally, 6 *Witkin California Procedure* 2d Ed. For purposes of this memorandum, supersedeas refers to the matter-of-right stay provided by FRCP 62(d).

In addition to the Rule 62(d) supersedeas stay, a matter-of-right stay of enforcement of a money judgment is granted automatically by FRCP 62(a). This rule stays execution of judgment for 10 days from entry of judgment.

All other stays, including any stay of enforcement of a money judgment that departs from Rule 62(d), are discretionary. FRCP 62(c), (g); FRAP 8(a), (b); FRBP 805. See generally, 11 *Wright & Miller* pp. 306–34, 16 *Wright & Miller*, Cooper & Gressman pp. 380–3.

The present appeal is not from a money judgment as such but from a judgment of the bankruptcy court holding that a state court money judgment is unaffected by debtor's discharge in bankruptcy and therefore is not stayed by the provisions of 11 U.S.C. § 362 or 11 U.S.C. § 524. Thus, while true supersedeas is not before us because the writ of execution appellee relies upon issued from the state court and not

from the bankruptcy court, "the doctrines which apply to a supersedeas can . . . be brought in by way of analogy." *Hovey v. McDonald*, supra, 160, 3 S.Ct. 142.

### III.

#### Supersedeas Stays

The matter-of-right stay of money judgments was at one time provided by statute, more recently by rule. See discussion in *In re Federal Facilities Realty Trust*, 227 F.2d 651 (7th Cir. 1955) at p. 654. It has been said:

"A supersedeas, like an appeal, is a matter of right, and its allowance does not rest in the sound discretion of court or judge . . . The cases in which the writ or the appeal . . . is a supersedeas are determined by acts of Congress, and not by the opinion or discretion of the judge or justice. His only function is to determine whether or not the security offered is good and sufficient. If it is, it is his duty to take it, and upon his acceptance of it the execution of the judgment or decree is stayed . . . [T]he law itself works the supersedeas."

*McCourt v. Singers-Bigger*, 150 F. 102, 104–5 (8th Cir. 1906). Thus, upon filing a bond that is approved by the trial court, enforcement of a money judgment is automatically stayed without further order. FRCP 62(d); 11 *Wright & Miller* p. 326.

The non-discretionary supersedeas turns largely on approval of the amount of the bond by the trial court. Although no present rule of Federal Procedure provides standards for fixing the amount, "former Rule 73(d) described what always has been good practice on a supersedeas bond, and, except as the matter now is regulated by local rules in a particular district, it is still a useful guide in these matters." 11 *Wright & Miller* p. 327. (There is no local rule governing the amount of a supersedeas bond in the Central District of California, either in the District or Bankruptcy Court. There is such a local rule in the Southern District of New York. As described in *Trans World Airlines Inc. v. Hughes*, 314

F.Supp. 94 (S.D.N.Y. 1970), aff'd 515 F.2d 173 (2d Cir. 1975), the rule requires that the supersedeas bond be 111% of the judgment plus $250 to cover costs on appeal). Thus former FRCP Rule 73(d), which did not survive adoption of the Federal Rules of Appellate Procedure, established a standard that exists today. "Rule 8(b) of the Federal Rules of Appellate Procedure has superseded, but not annulled that former Rule, and the law thereunder. Hence the law as above stated has lost none of its validity or vitality." *Tully v. Kerguen*, 304 F.Supp. 1225, 1227 (D. V.I. 1969). Accord: *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979).

Former Rule 73(d) described the form of the supersedeas bond and its amount. In form, the "bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award."

"[T]he amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, unless the court after notice and hearing and for good cause fixes a different amount or orders security other than the bond."

The standard for supersedeas bonds under Rule 62(d) thus incorporates former Rule 73(d) and may be summarized:

1. The non-discretionary, matter-of-right stay requires a bond in sufficient amount to cover the unsatisfied judgment, costs on appeal, interest and damages for delay. Former Rule 73(d).

2. For cause, established after notice and a hearing, the court has discretion to:

   a. Fix a different amount, or

   b. Order security other than the bond.

*Poplar Grove, Etc. v. Bache Halsey Stuart, Inc.*, supra; *Trans World Airlines Inc. v. Hughes*, supra; *C. Albert Sauter Co.,*

*Inc. v. Richard Sauter Co., Inc.*, 368 F.Supp. 501 (E.D.Pa.1973).

(The discretionary supersedeas bond is examined below).

An appellant from a money judgment may, as a matter of right, obtain a stay of execution by posting a supersedeas bond in an approved amount at any time, whether before or after the time of filing the notice of appeal. FRCP 62(d).

The foregoing contemplates the trial court as the forum because FRCP 62(d) is addressed to the district court, not to the appellate court. Undoubtedly the appellate court has power to accept and approve a Rule 62(d) supersedeas bond but the cases do not reflect such a practice. Thus the only time an appellate court becomes involved in true supersedeas cases is when the trial court has committed error; this might take the form of refusing to accept a supersedeas bond, refusing to approve it or permitting execution even though an approved bond has been filed. *McCourt v. Singers-Bigger*, supra.

### IV.

#### *Discretionary Stays*

Procedurely, discretionary stays of judgments and orders pending appeal are governed by FRCP Rule 62(c) and (g); FRAP 8(a) and (b), and FRBP 805. As stated by one authority, FRCP 62(c) and (g), taken together, reflect "the inherent power of the courts to make whatever order is necessary to preserve the status quo and to ensure the effectiveness of the final judgment." 11 *Wright & Miller* p. 315. The discretion of the court is exercised "upon such terms as to bond or otherwise as [the court] considers proper for the security of the rights of the adverse party." FRCP 62(c). While the power to maintain the status quo pending appeal "should always be exercised when any irremediable injury may result from the effect of the decree as rendered" (*Hovey v. McDonald*, supra, 109 U.S. 161, 3 S.Ct. 143), both federal and California Courts hold that ". . . this power should be sparingly employed and reserved

for the exceptional situation." *People v. Emeryville*, 69 Cal.2d 533, 72 Cal.Rptr. 790, 793, 446 P.2d 790, 793 (1961).

The accepted standards for discretionary stays are described in *Schwartz v. Covington*, 341 F.2d 537 (9th Cir. 1965):

1. Appellant is likely to succeed on the merits of the appeal.

2. Appellant will suffer irreparable injury.

3. No substantial harm will come to appellee.

4. The stay will do no harm to the public interest.

A stay pending appeal should comply with the requirement of FRCP 65(d) that every order granting an injunction set forth the reasons for its issuance and be specific in its terms. 11 *Wright & Miller* p. 324; *U. S. v. El-O-Pathic Pharmacy*, 192 F.2d 62, 80 (9th Cir. 1951); *Poplar Grove, Etc. v. Bache Halsey Stuart, Inc.*, supra 1190.

### V.

#### *Modified Supersedeas*

Somewhat different standards are applied when discretionary stays of money judgments depart from the non-discretionary supersedeas stay of FRCP 62(d). The starting point is the requirement of former Rule 73(d) that good cause be shown. If the appellee is fully protected, good cause does not require a showing of probable success or of irreparable injury.

In *Poplar Grove, Etc.*, supra, the court of appeals said that proof that appellant's "financial condition is so impaired that it would have difficulty in securing a supersedeas bond" could suffice as good cause. "[I]f the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court . . . is free to exercise a *discretion* to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish *equal protection* to the judgment creditor." Emphasis supplied. *Poplar*

*Grove, Etc.*, supra, 1191. See also *Trans World Airlines, Inc. v. Hughes*, supra; *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, supra.

In departing from both the normal supersedeas bond and the normal discretionary stay rules (high probability of success on appeal and irreparable injury), the burden is on the appellant. "If a court chooses to depart from the usual requirement of a full security bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such departure. It is not the burden of the judgment creditor to initiate contrary proof. Such a supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money." *Poplar Grove, Etc.*, supra, 1191.

The foregoing standards for discretionary stays on appeal are equally applicable whether the discretion is exercised by the trial court or the appellate court. In practice, the appellate court rarely exercises this discretion.

## VI.

### Trial, Appellate Roles

While the power to stay enforcement of a judgment resides in the appellate courts as well as the trial courts, it is usually exercised by the trial court. "Application for a stay of the judgment or order of the [trial] court pending appeal, or for approval of a supersedeas bond . . . must ordinarily be made in the first instance in the [trial] court." FRAP 8, FRBP 805.

Witkin calls this an exhaustion of remedy rule. 6 *Witkin Cal.Proc.* 2d Ed. 4186. It is also a rule of practicality and propriety. Accordingly, appellate courts are reluctant to entertain a request for stay unless it is demonstrated that the trial judge is unavailable or that the request was denied by the trial judge. Nevertheless, only in the former situation does the appellate tribunal normally exercise its own discretion; in other instances (such as where the trial court has denied the stay) the appellate court simply determines whether the trial court abused its discretion.

In *American Strawboard Co. v. Indianapolis Water Co.*, 81 F. 423 (7th Cir. 1894), this rule was attributed to the Supreme Court: "It is thus apparent that the Supreme Court, while asserting its power, deemed it advisable to rest the discretion to suspend the operation of the writ of injunction pending appeal from final decree with the trial judge, and established the rule that in general *the appellate court would not*, pending appeal and in advance of a decision by the court upon the merits, *interfere with the discretion lodged with the trial judge*. This conclusion is bottomed on manifest grounds of propriety." Emphasis supplied.

Another reason for requiring applicants to seek stays from the trial court is that appellate courts are not as well equipped to enforce injunctive orders. 11 *Wright & Miller* p. 325.

Where the trial court refused to stay enforcement pending appeal, the Seventh Circuit said: "[W]e cannot say that the court abused its discretion." *Hormann v. Northern Trust Co.*, 114 F.2d 118 (7th Cir. 1940). Likewise, when a stay was granted, the First Circuit ruled that no abuse of discretion appeared. *United States v. Platt Contracting Co.*, 324 F.2d 95 (1st Cir. 1963).

The trial court's discretion is so great that it is sometimes said that the appellate court should not grant a stay of enforcement pending appeal after it has been denied by the trial court. *Sommer v. Rotary Lift Co.*, 58 F.2d 765 (9th Cir. 1932). "I think it bad practice to renew before me the motion to stay the accounting heretofore disposed of by the [trial judge], and his conclusion will not be reconsidered." *Chadeloid Chemical Co. v. H. B. Chalmers Co.*, 242 F. 71 (2d Cir. 1917).

As to California practice, Witkin states: "If the appellant does invoke the trial court's discretion and is denied relief, supersedeas will ordinarily be refused, despite the exhaustion of remedy, because *the discretion of the trial court will be upheld in the absence of a clear showing of abuse.*"

Emphasis supplied. 6 *Witkin Cal.Proc.* 2d Ed. 4186.

Any other rule would distort the delicate balance between trial and appellate levels and deny recognition of their respective roles, all to the detriment of the judicial system and of those it serves. Litigants are entitled to their day in court, and they are entitled to have the trial court's action reviewed but they are not entitled to a second trial or hearing, whether from another trial judge or from an appellate judge. This has not always been true of bankruptcy court litigation; trials de novo by district judges sitting as appellate judges were not completely eliminated until recent years. A most salutory feature of the Federal Rules of Bankruptcy Procedure was its requirement that the reviewing court accept the bankruptcy judge's findings unless they are clearly erroneous. FRBP 810. It is just as important to the properly functioning bankruptcy court that the trial judge's rulings on stays pending appeal be disturbed only in the event of error or abuse of discretion.

## VII.

### Conclusion

It is evident that appellant has failed to carry his burden of demonstrating that the trial judge abused his discretion or, indeed, that he denied relief.

Aside from the order staying the February 26 marshal's sale no request was made by appellant to Judge Hyer that was not granted. Appellant sought and agreed to a $12,500 supersedeas bond. Judge Hyer granted that order and has never been requested to modify it.

Appellant's relief, if any, must come from the trial judge. The stay pending appeal is vacated, effective 10 days from entry of this order.

GEORGE, Bankruptcy Judge, concurring.

Although I also favor a vacation of our stay of March 3, 1980, I cannot bring myself to join in the reasoning of the instant order. I feel that it adopts an unwarranted, unjust, and dangerously inflexible procedural approach not intended by any of the federal rules cited by the majority.

On February 25, 1980, this Panel was faced with an extremely troubling dilemma. An appellant, who had failed to take advantage of the order of the trial court setting his supersedeas bond amount at $12,500—an amount to which his counsel had originally stipulated—was seeking to stay an execution sale which was to be held the following day as a result of his inaction. The principal reason given by him for not having initially posted the bond was that he had not been able to raise the sum himself, and that no bonding company was willing to stand as his surety. The Appellant's purpose in coming before the Panel for relief was three-fold. First, he felt that the personal property to be sold was of such a unique quality and character that it warranted the preservation of title in his name pending the outcome of this appeal. Second, counsel for the Appellant had recently become aware of certain actions which were being taken by the District Attorney of Los Angeles County, California, which seemed to contradict conclusions reached by the trial court and evidence given by a key witness for the Plaintiff at trial. This gave further assurance to counsel as to the potential for success in his appeal. Finally, an effort to contact the trial judge had proven ineffective, as had an attempt to obtain emergency relief from the other bankruptcy judge sitting in that area of the district. Hence, counsel felt that his duty to go first to the trial judge for a modification of his stay, *see,* Federal Bankruptcy Rule 805, had been mitigated by the judge's unavailability.

In examining the factual portrayal given us by counsel for both parties, it was felt by the Panel that a modification of the trial judge's supersedeas order was necessary and proper in order to give this appeal some sort of meaning aside from its possible impact upon future litigants, or its use as fuel for esoteric debates among bankruptcy scholars. *See generally Land Oberoesterreich v. Gude,* 93 F.2d 292, 293 (2d Cir. 1937); *Williams v. Sawyer Bros., Inc.,* 51 F.2d 1004,

1006 (2d Cir. 1931). Quite in line, I felt, with the quantitative bonding determination made by Bankruptcy Judge William H. Hyer, we decided to allow the United States Marshal's Office to hold the subject personal property and to insist that the Appellant post a bond in the amount of $3,500 with the bankruptcy court. Between the sale value of the execution property and the amount of the bond, we assumed that the Appellee would be adequately protected, at least to the extent of the bonding requirement set by Judge Hyer. The purpose of this arrangement was not to discredit the supersedeas determination of Judge Hyer,[1] but to accommodate the real needs of the Appellant to that determination and to the appellate rights of the Appellee. And, other than with respect to an inadvertent placement of the costs of storage upon the Appellee—an error which has not been remedied by the Appellant despite the admonitions of this Panel—no one has criticized the general fairness or intrinsic appropriateness of our order. Even with regard to the above-mentioned storage costs, criticism came only from within the Panel, itself. No motion to modify our March 3rd order has ever been submitted to the Panel.

Nevertheless, my brethren have decided *sua sponte* to find a departure "from fundamental principles of appellate review" in our March 3rd order, along with an unnecessary assumption of "responsibilities that ordinarily are reserved to the trial court." In disagreeing with this position, I find that the procedural norm has been mistaken for the procedural rule in this case. Accordingly, I do not, for the most part,[2] disagree with the general legal analysis found in the majority's opinion. They are absolutely correct in their assertion that the use of an appellate body's power to issue stays has been severely limited, by rule and case law, in ordinary circumstances where a return to the trial court for relief remains a reasona-

ble possibility. *See, e. g.,* Federal Bankruptcy Rule 805; F.R.A.P. Rule 8(a); *Cumberland Telephone & Telegraph Co. v. Louisiana Public Service Commission,* 260 U.S. 212, 43 S.Ct. 75, 67 L.Ed. 217 (1922). Two principal bases exist for this curb upon an appellate court's injunctive authority, one being an oft-expressed matter of practicality, the other a seldom-admitted application of the principle of comity to relationships among the various areas of responsibility in the federal judiciary.

With respect to the first of these fundamental concerns, the United States Supreme Court noted in the *Cumberland* case, *supra,* that non-mandatory stays often require a court to ascertain and balance the benefits and costs involved in maintaining the status quo during an appeal. It further observed that "the court which is best and most conveniently able to exercise the nice discretion needed to determine this balance of convenience is the one which has considered the case on its merits, and therefore is familiar with the record." *Id.* at 219, 43 S.Ct. at 77. Consequently, "[w]ithout abdicating [its] unquestioned power to grant" such stays, the *Cumberland* court refused to issue an injunction pending an appeal where the trial court had not been properly given an opportunity to stay its own actions. *Id.* F.R.A.P. Rule 8(a) and, hence, Federal Bankruptcy Rule 805, simply codify the restrained policy adopted by the Supreme Court in *Cumberland.* 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 208.04, at 8–12 (2d ed. 1980).

A second practical concern which has been educed by appellate courts in referring injunctive matters back to trial courts, and which my brethren have aptly recognized in their opinion, deals with the relative abilities of trial and appellate courts to supervise their respective decrees. *See 11 C. Wright & A. Miller,* Federal Practice and

---

1. I can conceive of no criticism which could have been raised against Judge Hyer's $12,500 supersedeas bonding requirement, the parties having voluntarily stipulated to the propriety of this sum.

2. The majority does appear to overlook the extraordinarily discretionary nature of a supersedeas stay in bankruptcy, *see* 13 Collier on Bankruptcy ¶ 805.05, at 8–54 through 8–55 (14th ed. 1979), applying instead the usual F.R. Civ.P. Rule 62(d) standard to such stays.

Procedure § 2904, at 325 & n. 51 (1973). This consideration is magnified in cases involving a debtor in bankruptcy, where the trial court has held a controlling role not only with respect to the pertinent litigation, but also over the general debt relationship between the parties.

Bolstering these reasons of practicality and serving, I feel, as an additional impetus for the action of my brethren, is the broader, though often proper fear held by appellate courts that, in many instances their post-judgment injunctive decrees might unreasonably reflect negatively upon the competence of a trial judge. Some might think, for example, that our modification of Judge Hyer's original supersedeas order was done pursuant to a finding of error in his determination of the potential cost to the Appellee of this appeal or of impotence as to his lawful ability to respond to the Appellant's needs.

Neither of these notions, however, entered into the reasoning process which resulted in our March 3, 1980 decision. The Panel simply chose to believe the uncontradicted assertions of the Appellant's counsel that Judge Hyer was unavailable and that he could not, therefore, act upon this matter. Trial court unavailability is the most commonly recognized exception to the requirement that an appellant go first to that court for a stay pending an appeal. *See* 13 Collier on Bankruptcy ¶ 805.08, at 8–56 through 8–57 (14th ed. 1979); [3] 9 J. Moore, B. Ward & J. Lucas, *supra* ¶ 208.07, at 8–26 through 8–27 & n. 4. My brethren have attempted to mute this point by exaggerating the importance of our having issued two distinct orders, one to stay the immediate sale, the other to effect a modification in the general supersedeas arrangement in this case. The inference which we are undoubtedly to draw from this dichotomy is that while Judge Hyer's absence might excuse our first order (a proposition which the majority still disputes), it would not justify a later expansion upon that act. This reasoning, however, disregards the realities of Mr. Wymer's contacts with this Panel.

Whether merely staying the February 26th execution sale, or completely rearranging the Appellant's supersedeas security requirements for a more extended period of time, we were in fact modifying the earlier order of Judge Hyer. We were presuming to utilize our inherent injunctive powers to maintain the status quo in anticipation of a further examination of Mr. Wymer's appellate cause. In this regard, the initial stay was totally incidental to our general review of the Appellant's emergency motion. We simply needed additional time in which to decide whether a continued modification of Judge Hyer's stay was advisable. And, neither the Appellant, nor the Appellee, could assure us that Judge Hyer would be available to handle this matter in a more expeditious fashion than could the Panel.

Once he was properly before us, I do not think it fair that we should have expected Mr. Wymer to keep an anxious eye cocked in the direction of Judge Hyer's temporarily vacant bench. We had assumed the power to act upon this motion. We had already used our injunctive powers to clear the way for our action on the motion. One uncon-

---

**3.** The cited passage from *Collier* states as follows:

"The first sentence of Rule 805 provides: 'A motion for a stay . . . must ordinarily be made in the first instance to the Referee.'

"*The third sentence contemplates that the motion may be made to the district court.*

"Similar provisions are contained in Rule 8, F.R.A.P., from which Rule 805 was adapted. Relief under this rule can usually be obtained more effectively and more speedily by motion to the Referee since he is already familiar with the case and *may be more accessible.* It is *desirable* that the relief be sought from the Referee in the first instance because the decision to grant or deny the relief often will involve a delicate balancing of the equities that only the Court familiar with the case is able to make.

"*But the Referee may be unavailable* or it may be obvious to the appellant that from the nature of what occurred in the Referee's court, relief from the Referee is improbable." (Emphasis supplied) (Footnotes omitted).

I fail to see how the hypothetical situation of unavailability here cited as warranting recourse to the appellate court is any different from that found in the instant case.

tested assertion of trial court unavailability should have been quite sufficient to permit the Panel to act pursuant to Federal Bankruptcy Rule 805, at least during the few days which were consumed by our actions in the present case. If counsel for the Appellee had felt differently on this point, *he* should have let us know that we *could* have remanded the matter to Judge Hyer's immediate attention. No such request was ever made. Consequently, it would be patently unjust to vacate our protective order now, if done simply because we are presently able to look back and see that recourse might have been had to Judge Hyer's court following our initial stay of the February 26th sale.

As a further point, the Panel fully understood at the time it issued its stay that effective resort could not be made to Judge David N. Naugle, since he was unwilling to vary the terms of an order of his fellow bankruptcy judge. To begin with, it should be noted that nothing in Federal Bankruptcy Rule 805, or in any other federal rule of procedure, requires that an appellant seek relief from every other trial court judge in his district before he can approach the appellate court for relief. A plain reading of Rule 805 mandates only that he return to the judge who rendered the order or decree from which he has made his appeal. The rule says that "[a] motion for a stay of the judgment or order of a [bankruptcy judge], for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance to *the* [bankruptcy judge]." (Emphasis supplied). This makes sense. Under ordinary circumstances, a second bankruptcy judge will be no better informed than the appellate panel as to the facts of a particular case or appeal. Moreover, although his jurisdiction to act might be beyond question, a second bankruptcy judge must literally live with the effect of his decision upon his relationship with the judge whose order he presumes to modify. This relationship severely impairs, in turn, this second bankruptcy judge's ability to supervise the enforcement of his injunctive decree. I cannot, therefore, fault Judge Naugle for refusing to alter an order

entered in a case alien to his own personal docket. I do feel, however, that we should recognize the burden which his decision placed upon our shoulders to act responsibly with respect to this order. We were not asked to evaluate Judge Naugle's refusal to countermand Judge Hyer's order, but rather to act under our own lawful volition. Given the evidence we had of Judge Hyer's absence, I feel that we were properly empowered to assume this function.

In ascertaining the general propriety of our final action (if given the power to act in the first instance), my brethren acknowledge that a court may go so far as to reduce the coverage of a bond below that court's appraisal of the potential loss sufferable by the appellee, even with respect to a non-discretionary supersedeas stay, where a showing of impaired financial ability to post such a bond has been made. *See Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.,* 609 F.2d 1189, 1191 (5th Cir. 1979). If a court can significantly reduce the amount of a supersedeas bond upon a definite showing of poverty, *a fortiori,* it can use another security arrangement in such a situation, which fully compensates for the value of the replaced bonding device. *See, e. g., Trans World Airlines, Inc. v. Hughes,* 515 F.2d 173 (2d Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976) (approving the use of a secured letter of credit in lieu of a supersedeas bond). The Federal Rules of Bankruptcy Procedure do not preclude such a substitution. In fact, Federal Bankruptcy Rule 805 specifically allows that "[t]he [appellate panel] may condition the relief it grants under this rule upon the filing of a bond *or other appropriate security* with the [bankruptcy judge]." (Emphasis supplied).

At no time in these proceedings has the Appellant's alleged inability to post the $12,500 bond ordered by Judge Hyer been seriously questioned by the Appellee or by the Panel. And, again, I believe that our security arrangement in this case has been roughly equivalent to the bond required by Judge Hyer. Given the latter's unavailability, we did not act imprudently or improper-

ly in granting the Appellant both immediate relief from the impending Marshal's sale and ongoing protection from any further sale during the period of this appeal.

In an appropriate case, I can see how wisdom might dictate that an appellate panel issue only a temporary stay to permit counsel to renew their contact with the trial court in order to obtain more long-term relief. Still, having acted lawfully, as we did in the present proceeding, I think that the Panel has made much too large an issue out of the propriety of its long-past actions. And, I fear that the policy now adopted by this Panel has effectively emasculated the already limited injunctive powers given to appellate panels under Federal Bankruptcy Rule 805. If the facts before us would not allow the action taken, then there would appear to be *very* few, if any, instances in which we could feel good about utilizing the authority recognized by this rule to stay a judgment or order from which an appeal to us has been taken. All that remains is a troubling spectre of distraught appellants, unable to locate trial judges, or to convince appellate judges that procedural property rights are of greater importance than judicial etiquette. Certainly, more noble causes than this exist for the rending of our garments in humility.

Nevertheless, due to the apparent unwillingness of the Appellant to take any action to alleviate the improperly situated burden of paying the rather significant costs of storing his personal property, I would sign a more limited order of vacation in this matter.

