In re HERITAGE VILLAGE CHURCH AND MISSIONARY FELLOWSHIP, INC., a/k/a PTL, PTL Club, Fort Heritage Campgrounds and Christian Retreat, PTL Enterprise, Debtor.

David W. CLARK, Trustee, Appellee,

v.

UNITED STATES of America, James A. Baker, III, Secretary of the Department of the Treasury, and Lawrence B. Gibbs, Commissioner of Internal Revenue, Appellants.

Civ. A. No. 88–236.

United States District Court,
D. South Carolina,
Columbia Division.

March 7, 1988.

Dennis W. Shedd, (Det. F. Bowers, Jr. on brief), Bethea, Jordan & Griffin, Columbia, S.C., R. Bradford Leggett, (Richard B. Howington, Lynne P. Klauer, Allman Spry Humphreys, on brief), Leggett & Howington, P.A., Winston–Salem, N.C., for David W. Clark.

Richard F. Mitchell, (Michael L. Paup, Acting Asst. Atty. Gen., Steven Shapiro, Francis M. Allegra, Betsy E. Burke, Attorneys, Tax Div., on brief), U.S. Dept. of Justice, Washington, D.C., for U.S.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on appeal from an order of the bankruptcy court granting a preliminary injunction which prohibits the Internal Revenue Service ("IRS") from revoking the tax exempt status of the debtor, Heritage Village Church and Missionary Fellowship, Inc. ("PTL"). The appellants, United States of America, James A. Baker, III, and Lawrence B. Gibbs ("Government"), appeal the order of the bankruptcy court. For the reasons set forth below, the Court reverses the order granting preliminary injunctive relief.

On May 17, 1973, the IRS issued a letter ruling granting PTL tax exempt status pursuant to 26 U.S.C. § 501(c)(3). On June 12, 1987, PTL filed a voluntary petition for relief under Title 11 of the United States Code. In late 1987, the IRS advised David W. Clark, the Trustee in Bankruptcy, ("Trustee") that the IRS intended to revoke PTL's tax exempt status and to publicly announce the revocation on December 10, 1987. The revocation was to be retroactive to May 31, 1981. On December 9, 1987, the Trustee filed a complaint with the bankruptcy court seeking injunctive relief restraining the defendants from revoking PTL's tax exempt status. That same day, the Trustee filed a motion for a temporary restraining order to enjoin revocation pending a hearing on the matter. The bankruptcy court granted the Trustee's motion and issued a temporary restraining order. A hearing was held before the bankruptcy court on December 16, 1987. By order filed December 21, 1987, the bankruptcy court issued a preliminary injunction "preventing the revocation of the tax exempt status of PTL, or any of its subsidiaries or affiliates, and also preventing the revocation or the withdrawal of a letter ruling declaring that PTL qualifies for tax exempt status under § 501(c)(3) of The Internal Revenue Code." Order at 10. The order states the injunction is to remain in effect through May 1, 1988.

In its order, the bankruptcy court concluded the injunction is authorized under section 362(a)(6) of the Bankruptcy Code which automatically stays "any act to collect and assess taxes." The bankruptcy court further concluded its power to enjoin the revocation is unaffected by the provisions of the Anti–Injunction Act, 26 U.S.C. § 7421, ("Act") because the Act is preempted by the provisions of the Bankruptcy Code.

The Government bases its appeal on two grounds. First, the Government contends the bankruptcy court lacked jurisdiction to issue the injunction because section 362(a) does not stay revocation of a debtor organization's tax exempt status and because the Anti–Injunction Act limits the injunctive powers otherwise conferred on the bankruptcy court. Second, the Government asserts that if the bankruptcy court possessed jurisdiction, it abused its discretion in issuing the injunction. Because this Court concludes the bankruptcy court was

without jurisdiction to issue the injunction, it does not reach the Government's second ground.

## I.

First, the Court considers whether the injunction is authorized under the automatic stay provisions of section 362(a) of Title 11 of the United States Code. The bankruptcy court concluded section 362(a)(6) automatically stays revocation of a debtor organization's tax exempt status. The Trustee now urges this Court to reach the same conclusion and, in addition, argues the proposed revocation is stayed by subsections (1) and (3) of section 362(a). The Government contends none of these stay provisions prohibits the proposed revocation. The Court agrees with the Government and concludes revocation of PTL's tax exempt status is not automatically stayed under section 362(a).

█ The bankruptcy court concluded that revocation is prohibited by section 362(a)(6), which stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." Because the Court finds that revocation of a debtor organization's tax exempt status is not an "act to collect, assess or recover" taxes, the proposed revocation is not stayed by section 362(a)(6).

█ An "assessment" of taxes is a formal, discrete act with specific legal consequences. The IRS makes an assessment of unpaid taxes only after a notice of deficiency is sent to the taxpayer. *In re Carlson,* 580 F.2d 1365, 1368 (10th Cir.1978). Upon entering an assessment, the IRS sends the taxpayer a notice of assessment and demand for payment within sixty days. 26 U.S.C. § 6303. The assessment gives rise to a federal tax lien which attaches to the taxpayer's property upon failure to pay after notice and demand. *Id.* at 1368; *U.S. v. Mitchell,* 349 F.2d 94, 99 (5th Cir.1965); 26 U.S.C. §§ 6321, 6322. In addition, the assessment triggers the six-year statute of limitations for collection of the taxes by levy or by court proceedings. 26 U.S.C. § 6502(a). The proposed revocation of

PTL's tax exempt status has none of these characteristics or consequences. In fact, the Trustee has not shown that revocation would have any immediate effect on PTL's tax liability.

In determining that revocation of tax exempt status is an act of assessment, the bankruptcy court relied on *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). In that case, the United States Supreme Court held that a suit to enjoin revocation of an organization's tax exempt status violates the Anti-Injunction Act, 26 U.S.C. 7421(a), which prohibits suits to restrain the assessment and collection of taxes. On the basis of that holding, the bankruptcy court concluded that revocation of tax exempt status is an act of assessment. This Court disagrees with the bankruptcy court's interpretation of *Bob Jones University.*

█ In *Bob Jones University,* the Supreme Court held not that revocation is an act of assessment, but only that an injunction against revocation would restrain the assessment of taxes in violation of the language and purposes of the Anti-Injunction Act. As the holding in *Bob Jones University* implies, revocation is a prerequisite to assessing and collecting taxes from an organization that has been granted a tax exemption under 26 U.S.C. § 501(c)(3). Until the tax exempt status is revoked, the IRS may not assess taxes against a tax exempt organization. Thus, an injunction preventing revocation necessarily prevents assessment. This does not mean, however, that revocation is itself an act of assessment. The Anti-Injunction Act "applies not only to the actual assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection." *Lowrie v. United States,* 824 F.2d 827, 830 (10th Cir.1987). *See also Blech v. United States,* 595 F.2d 462, 466 (9th Cir.1979); *United States v. Dema,* 544 F.2d 1373, 1376 (7th Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977).

The Trustee asserts that even if revocation is not an assessment, it is nonetheless

stayed by subsection (a)(1) or (a)(3) of section 362. The Court disagrees and concludes that neither provision stays revocation of tax exempt status.

■ Section 362(a)(1) stays "the commencement or continuation ... of a judicial, administrative or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." Assuming without deciding that this language would, standing alone, stay the proposed revocation, the Court nevertheless finds that revocation is permitted by the section 362(b)(4) exception.

Section 362(b)(4) excepts from the section 362(a)(1) stay "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." This exception has been broadly construed by the courts and has been applied to permit a wide range of governmental actions. *See, e.g., EEOC v. McLean Trucking Co.,* 834 F.2d 398 (4th Cir.1987) (age and race discrimination action against debtor); *In re Commonwealth Oil Refining,* 805 F.2d 1175 (5th Cir.1986) (order compelling compliance with environmental laws); *Cournoyer v. Town of Lincoln,* 790 F.2d 971 (1st Cir.1986) (enforcement of zoning ordinance); *NLRB v. Evans Plumbing Co.,* 639 F.2d 291 (5th Cir.1981) (enforcement of NLRB order); *Pasadena Offices, Ltd. v. City of So. Pasadena, Fla.,* 64 B.R. 192 (Bankr.M.D.Fla.1986) (revocation of municipal building permit); *In re Jesus Loves You, Inc.,* 40 B.R. 42 (Bankr.M.D.Fla.1984) (revocation of corporate charter); *FTC v. R.A. Walker Assocs., Inc.,* 37 B.R. 608 (D.D.C.1983) (injunction to freeze debtor's assets); *D.H. Overmyer Telecasting Co. v. Lake Erie Communications, Inc,* 35 B.R. 400 (Bankr.N.D.Ohio 1983) (revocation of broadcasting license). The legislative history of section 362 indicates that this exception applies "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix

damages for violation of such a law." S.Rep. No. 989, 95th Cong., 2d Sess. 52, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838, *quoted in EEOC v. McLean Trucking Co.,* 834 F.2d at 401. The term "police or regulatory power" encompasses regulatory actions "affecting the health, welfare, morals, and safety" but not those "that directly conflict with the control of the res or property of the bankruptcy court." *Missouri v. United States Bankruptcy Court,* 647 F.2d 768, 776 (8th Cir. 1981).

Revocation of a debtor organization's tax exempt status has no direct effect on the property of the debtor's estate inasmuch as section 362(a)(6) stays the assessment of any taxes against the debtor organization. On the other hand, as the Government points out, the IRS, in passing on and reviewing an exemption application, promotes the public welfare by assuring donors that their contributions will qualify for a charitable deduction and that the donee organization is a charitable one. The Court also notes that the IRS, in revoking an organization's tax exemption, promotes the public welfare by protecting the governmental interest in the efficient assessment and collection of taxes from contributors who could otherwise claim a charitable deduction for contributions to an organization which no longer qualifies for tax exempt status.[1] Accordingly, the Court concludes that the proposed revocation falls within the section 362(b)(4) exception and is, therefore, not stayed by section 362(a)(1).

■ Next the Trustee asserts revocation is stayed by section 362(a)(3) which automatically stays "any act to obtain possession of property of the estate or of property from the estate." The property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Trustee contends that PTL's tax exemption constitutes property of the estate subject to the section 362(a)(3) stay. The Court concludes a tax

---

**1.** *See infra* Part II.

exemption is not property and therefore is not subject to this stay.

In *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983), the Fifth Circuit Court of Appeals held that "landing slots" allocated to a debtor airline by the Federal Aviation Administration ("FAA") are not property of the debtor's estate subject to the bankruptcy court's jurisdiction. In that case, the FAA withdrew certain landing slots it had allocated to the debtor and reassigned them to other airlines. The district court subsequently ordered the FAA to transfer slots to the debtor to make possible a proposed sale of the debtor's assets. On appeal, the Fifth Circuit Court of Appeals reversed the district court, concluding that the slots were merely "rules" which "do not lose their character as rules because they modify airlines' claimed rights to slot allocations." 700 F.2d at 942. The court explained: "The slots are actually restrictions on the use of property—airplanes; not property in themselves." *Id.*

Likewise, a tax exemption is a rule and is not property of the bankrupt's estate. Although this rule affects the debtor's ability to acquire property, it is not in itself property. Consequently, the proposed revocation is not subject to the section 362(a)(3) stay. *Cf. Jordan v. Randolph Mills*, 716 F.2d 1053 (4th Cir.1983) (action by Federal Energy Regulatory Commission granting license to another to operate dam on debtor's land does not violate bankruptcy court's order prohibiting interference with debtor's possession and management of its property); *D.H. Overmyer Telecasting Co. v. Lake Erie Communications, Inc*, 35 B.R. 400 (Bankr.N.D.Ohio 1983) (broadcasting license issued by Federal Communications Commission is not property of bankrupt's estate subject to 362(a)(3) stay).

For the reasons set forth above, the Court concludes the proposed revocation is not stayed under section 362 of the Bankruptcy Code. The Court notes that this conclusion does no violence to the policies underlying the automatic stay provisions. The purpose of section 362 is to "[give] the debtor a breathing spell from his creditors" and to "[stop] all ·collection efforts, all

harassment, and all foreclosure actions." Notes of Committee on the Judiciary, H.R. Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6296–97. The Trustee has not argued here, or below, that revocation would in any way affect PTL's prior debts or lead to additional harassment or collection efforts by creditors. In fact, any attempt by the IRS to assess or collect additional taxes would be stayed under section 362(a)(3).

## II.

█ Having decided the bankruptcy court's injunction is not authorized by the automatic stay provisions, the Court next considers whether the injunction is within the bankruptcy court's general powers under section 105 of the Bankruptcy Code. Section 105 provides in part: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Government asserts this language cannot authorize an injunction against revocation of tax exempt status because section 105 is limited by the Anti–Injunction Act, 26 U.S.C. § 7421. The Court agrees with the Government that the Anti–Injunction Act prohibits the bankruptcy court from invoking its section 105(a) authority to enjoin revocation of a debtor organization's tax exempt status.

The Anti–Injunction Act provides in part: "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. 7421(a). In *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the United States Supreme Court held that this language prohibits a court from enjoining revocation of a charitable organization's tax exempt status. This Court finds *Bob Jones University* controlling here and concludes that the Anti–Injunction Act prohibits the injunction issued by the bankruptcy court.

The Court recognizes that the facts of this case are in some respects distinguish-

able from those in *Bob Jones University*. The injunction in *Bob Jones University* would have restrained the assessment and collection of taxes against the charitable organization. In the present action, on the other hand, it is arguable that the bankruptcy court's injunction would not impede the collection of taxes from PTL because section 362(a)(6) automatically stays such assessment and collection with regard to the debtor. This difference, however, is not critical. Assuming without deciding that the injunction will not delay the assessment and collection of taxes as to PTL, it will nevertheless delay the assessment and collection of taxes against donors who contribute to PTL during the term of the injunction. If the IRS is enjoined from revoking PTL's tax exempt status, donors may rely on the letter ruling and are assured in advance that their contributions to PTL qualify as charitable deductions. *See Bob Jones University*, 416 U.S. at 729 & n. 2, 94 S.Ct. at 2042 & n. 2. The Court in *Bob Jones University* found that the impact an injunction would have on donors' tax liability is sufficient to render it an injunction to restrain the collection of taxes and to place the injunction "within the literal scope and the purposes of the Act." *Id.* at 739, 94 S.Ct. at 2047.

The bankruptcy court found the Anti–Injunction Act does not affect its jurisdiction to issue an injunction because the Act is preempted by the provisions of the Bankruptcy Code. In reaching this conclusion, the court relied on *Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975). In *Bostwick*, the Eighth Circuit Court of Appeals held that the provisions of the Bankruptcy Code preempt the Anti–Injunction Act so as to permit the bankruptcy court to enjoin the assessment of taxes. The *Bostwick* court reasoned: "We believe that the overriding policy of the Bankruptcy Act is the rehabilitation of the debtor and we are convinced that the bankruptcy court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act." *Id.* at 744. The Government contends *Bostwick* was wrongly decided and urges this Court to reject its holding. Whether or not *Bostwick* was correctly decided, the Court concludes its holding is not dispositive here.

The issue decided in *Bostwick* was whether, under the old Bankruptcy Act, the bankruptcy court had jurisdiction to restrain the assessment and collection of taxes *against a debtor*. In holding the bankruptcy court had such jurisdiction, the *Bostwick* court relied heavily on the bankruptcy court's powers to discharge a bankrupt's debts.[2] This reasoning is inapplicable here. The proposed revocation will have no immediate effect on the assessment of taxes against the debtor, PTL. Under the new Bankruptcy Code, the assessment of taxes against a debtor is automatically stayed by section 362(a)(6). Thus, revocation of PTL's tax exempt status would cause taxes to be assessed only against taxpayers who contribute to PTL. Because those taxpayers, as noted above, could no longer rely on the letter ruling granting PTL tax exempt status, they could not claim a tax deduction for their contributions and could, consequently, incur additional taxes.[3] Since these contributors are not debtors in bankruptcy, the issue is whether the bankruptcy court has jurisdiction to enjoin the assessment and collection of taxes *against nondebtors* in order to further the debtor's rehabilitation.[4] The Court agrees with the majority of courts that have considered the

---

**2.** The Court stated:

The purpose of the Bankruptcy Act is to rehabilitate the debtor in order that the debtor might be motivated to lead a full and productive economic life. Taxes very often represent one of the largest—if not the largest—debts of the bankruptcy debtor. Congress specifically changed the law so that certain of the tax debts might be discharged. We cannot believe, in light of the statute, that the Congress nevertheless intended that the debt-

or be left in a state of uncertainty, subject at any time to the whim of the Revenue Service determination that it should now step in.
521 F.2d at 746–47 (footnotes omitted).

**3.** *See supra* page 406.

**4.** In *A to Z Welding & Mfg. Co. v. United States*, 803 F.2d 932 (8th Cir.1986), the Eighth Circuit expressly held its reasoning in *Bostwick* does not apply to injunctions to restrain the assessment and collection of taxes against nondebtors.

issue and concludes that the bankruptcy court lacks such jurisdiction.[5]

The scope of the Anti–Injunction Act is broad and its language has been liberally construed by the courts. *See, e.g., Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (Act prohibits injunction against revocation of tax exempt status); *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) (Act bars injunction against collection of social security and unemployment taxes); *In re Petrusch,* 667 F.2d 297 (2d Cir.1981), *cert. denied sub nom. Petrusch v. Teamster's Local 317,* 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982) (Act preempts Norris–LaGuardia Act); *Kirtley v. Bickerstaff,* 488 F.2d 768 (10th Cir.1973), *cert. denied,* 419 U.S. 828, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974) (Act prohibits suit for injunctive relief brought by "innocent spouses"); *Keese v. U.S.,* 632 F.Supp. 85 (S.D.Tex.1985) (Act prohibits injunction restraining IRS from auditing returns, disclosing tax preparer's name in interviews with his clients, withholding his client's refund checks or using information obtained from his clients). The policy underlying the Act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in suit for a refund.'" *Bob Jones University v. Simon,* 416 U.S. at 736, 94 S.Ct. at 2046 (quoting *Enochs v. Williams Packing and Navigation,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962)). So compelling is the Government's interest in the speedy assessment and collection of taxes that, in the absence of a statutory exception, the literal terms of the Act may be circumvented, and an injunction may issue, only "if it is clear that under no circumstances could the Government ultimately prevail," 416 U.S. at 737, 94 S.Ct. at 2046 (quoting *Enochs,* 370 U.S. at 7, 82 S.Ct. at 1129), or "where ... Congress has not provided the plaintiff with an alternate legal way to challenge the validity of a tax." *South Carolina v. Regan,* 465 U.S. 367, 372–73, 104 S.Ct. 1107, 1111, 79 L.Ed.2d 372 (1984).[6] Although Congress has at various times enacted specific statutory exceptions to the Act, none of them applies to the authority of the bankruptcy court. *See* 26 U.S.C. §§ 7421(a), 6212(a), 6212(c), 6213(a), 6672(b), 6694(c), 7426(a), 7426(b)(1), 7429(b). Nor does the Bankruptcy Code manifest any Congressional intent to exempt the bankruptcy court from the restrictions of the Anti–Injunction Act or to authorize an injunction restraining the assessment and collection of taxes against parties not in bankruptcy. Therefore, the Court concludes the Bankruptcy Code does not preempt the Anti–Injunction Act so as to permit the bankruptcy court to enjoin revocation of a debtor organization's tax exempt status.

In conclusion, the Court holds that the Anti–Injunction Act prohibits the bankruptcy court from enjoining revocation of a debtor organization's tax exempt status. The order of the bankruptcy court enjoining revocation of PTL's tax exempt status was issued outside its jurisdiction and is therefore reversed.

IT IS SO ORDERED.

---

**5.** *See In re La Salle Rolling Mills, Inc.,* 832 F.2d 390 (7th Cir.1987); *A to Z Welding & Mfg. Co.,* 803 F.2d 932 (8th Cir.1986); *United States v. Huckabee Auto Co.,* 783 F.2d 1546 (11th Cir. 1986). *In re Success Tool & Mfg. Co.,* 62 B.R. 221 (N.D.Ill.1986); *United States v. Rayson Sports, Inc.,* 44 B.R. 280 (N.D.Ill.1984); *In re Pressimone,* 39 B.R. 240 (N.D.N.Y.1984); *Bowen Indus. v. United States,* 61 B.R. 61 (W.D.Tex. 1986); *Cambridge Machined Prods. Corp. v. United States,* 58 B.R. 22 (Bankr.D.Mass.1985); *In re Amtol Corp.,* 57 B.R. 724 (Bankr.N.D.Ohio 1985); *In re Herbie K's, Inc,* 57 B.R. 468 (Bankr. N.D.Ill.1985); *In re Mohawk Indus., Inc.,* 55 B.R. 284 (Bankr.Mass.1985); *In re Idaho Agriquip-*

*ment, Inc.,* 54 B.R. 114 (Bankr.Idaho 1985); *Franklin Press, Inc. v. Internal Revenue Service,* 46 B.R. 523 (Bankr.S.D.Fla.1985); *contra Jon Co. v. United States,* 30 B.R. 831 (D.Colo.1983); *In re J.K. Printing Servs., Inc.,* 49 B.R. 798 (Bankr.W.D.Va.1985); *In re Original Wild West Foods, Inc,* 45 B.R. 202 (Bankr.W.D.Tex.1984); *Datair Fin. Servs., Inc. v. Starkey,* 37 B.R. 690 (Bankr.N.D.Ill.1983); *H & R Ice Co. v. United States,* 24 B.R. 28 (Bankr.W.D.Mo.1982).

**6.** The Trustee has not attempted to show that either of these conditions has been met here.