In the Matter of UNIVERSAL LIFE CHURCH, INC., a California Non–Profit Corporation, Debtor.

UNIVERSAL LIFE CHURCH, INC., a California Non–Profit Corporation, Appellant,

v.

UNITED STATES of America, et al., Appellees.

Nos. CV–F–93–5893–OWW, CV–F–93–5863–OWW.

United States District Court, E.D. California.

Nov. 6, 1995.

**436**

Carl W. Collins, Altman Collins and Gross, Modesto, CA.

EOC Ord, Ord and Norman, San Francisco, CA.

G. Patrick Jennings, United States Department of Justice, Trial Attorney, Tax Division, Washington, DC, for U.S.

## MEMORANDUM OPINION AND ORDER RE: BANKRUPTCY APPEAL AND MOTION FOR STAY PENDING APPEAL

WANGER, District Judge.

### I. INTRODUCTION

Universal Life Church ("ULC") appeals the November 19, 1993 order of the bankruptcy court denying ULC's motion for damages for the Internal Revenue Service's ("IRS") alleged violation of the automatic stay of 11 U.S.C. § 362.[1] The bankruptcy court held that the IRS did not violate the automatic stay provisions of 11 U.S.C. § 362(a) when it revoked ULC's tax-exempt status, but even if it did violate § 362(a), the revocation was authorized under the § 362(b)(4) exception to the automatic stay.

ULC also moves for a stay pending appeal of the August 31, 1993 bankruptcy court order to file corporate income tax returns for the fiscal years 1982–1985. The bankruptcy court has previously denied ULC's request for a stay. The United States has requested a briefing schedule for the appeal of the August 31, 1993 order.

### II. BACKGROUND

ULC filed a Chapter 11 bankruptcy petition on November 29, 1989. By a letter dated January 8, 1991, the IRS revoked ULC's tax-exempt status under 26 U.S.C. § 501(c)(3) for the fiscal years ending April 30, 1982 through April 30, 1985. (Appellant's Excerpt of Record at 40–41 [hereinafter Appellant's Excerpt].) The revocation letter also informed ULC that it was required to file federal income tax returns for those years. (Appellant's Excerpt at 41.)

An amended proof of claim for accrued but unassessed federal employment income taxes was filed in the bankruptcy court on October 21, 1992. No post bankruptcy petition claim for any taxes or assessments has been made. Nor has any notice of federal tax lien been filed. The government claim for income, employment, and unemployment taxes is an unsecured priority tax claim.

ULC filed a motion in the bankruptcy court on July 20, 1993, requesting both an order that the revocation of tax-exempt status was void as a violation of the automatic stay provisions of 11 U.S.C. § 362(a), and damages for such violation under 11 U.S.C. § 362(h).[2] (Appellant's Excerpt at 13–23.) The bankruptcy court orally denied the motion on August 30, 1993, (Appellant's Excerpt at 257–58), and issued its first amended written order denying the motion on November 19, 1993 (Appellant's Excerpt at 274–75). ULC appealed the order on November 22,

---

1. 11 U.S.C. § 362 was amended by Congress on October 22, 1994. This case commenced on July 20, 1993 when ULC filed the instant motion with the Bankruptcy Court. Because the 1994 amendments are inapplicable to cases commenced prior to October 22, 1994, Act of October 22, 1994, P.L. 103–394, Title VII, § 702(b), 108 Stat. 4150, this action is governed by 11 U.S.C. § 362 as it stood before the 1994 amendments.

2. Section 362(h) states in relevant part, "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages...." A corporation may not recover damages under § 362(h). *In re Goodman,* 991 F.2d 613, 619–20 (9th Cir.1993).

1993. By an order dated November 8, 1994, this court determined that the bankruptcy court's order was final for purposes of appeal to the district court under 28 U.S.C. § 158(a).

On June 1, 1993, the United States moved to compel ULC to file corporate income tax returns for the 1982–1985 fiscal years. (Report and Recommendation to United States District Court Concerning Finality of Appealed Order, dated April 6, 1995, at ¶ 3 [hereinafter Rep. & Rec.].) On August 31, 1993, the bankruptcy court ordered ULC to file such tax returns. (Appellant's Excerpt at 269–71.) The bankruptcy court refused to reconsider its decision and denied ULC's request for a stay pending appeal to the district court on November 9, 1993. ULC then filed a notice of appeal and a motion for stay pending appeal with the district court. By order of January 31, 1994, the district court remanded the matter to the bankruptcy court to determine whether the August 31, 1993 decision was final or interlocutory. On April 6, 1995, the bankruptcy court recommended that the August 31, 1993 decision be considered final for purposes of appeal. On June 8, 1995, ULC again moved the district court to stay the order to file tax returns pending its appeal of that order in the district court. In its motion, ULC asserts that the bankruptcy court reaffirmed its denial of the stay on May 24, 1995.

### III. STANDARD OF REVIEW

■ A district court reviews *de novo* a bankruptcy court's conclusions of law, including matters of jurisdiction. *Matter of Lockard,* 884 F.2d 1171, 1174 (9th Cir.1989). Findings of fact by the bankruptcy judge shall not be disturbed unless they are clearly erroneous. Fed.R.Bank.P. 8013.

■ When a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion. *In re Wymer,* 5 B.R. 802, 807 (9th Cir. BAP 1980).

### IV. DISCUSSION

#### A. *Procedural Requirements*

■ The Bankruptcy Rules dictate the length of briefs submitted on appeal from the bankruptcy court, unless the court or local rules issue orders to the contrary. Fed. R.Bank.P. 8010(c). This court has a standing order limiting opening briefs and memoranda to 25 pages each and reply briefs to 10 pages, unless prior leave of court seven days before the filing date is obtained. It is unclear whether counsel in this action received notice of the standing order before filing their briefs. Giving counsel the benefit of the doubt, Bankruptcy Rule 8010(c) will apply here, which limits opening briefs to 50 pages and reply briefs to 25 pages.

ULC's reply brief on the violation of the automatic stay appeal is 43 pages long. ULC has included 11 pages of additional argument in Appendix G. ULC did not obtain leave to file a brief in excess of the page limits.

ULC has also submitted an excessively long and untimely reply on the motion to stay the order to file tax returns pending appeal. Though the Bankruptcy Rules make no specific provision regarding the length of motions for stay pending appeal, the court believes that an eight page opposition does not warrant a 32 page reply. Finally, Local Rule 230 requires parties to file replies to motions "[n]ot less than five (5) court days preceding the date of hearing." ULC's reply was filed on October 18, 1995, only three court days before the hearing date of October 23, 1995. Because the government does not object, the replies will be accepted.

#### B. *Anti–Injunction Act*

■ ULC raises the issue of whether the Anti–Injunction Act deprives the court of subject matter jurisdiction to determine if the revocation of tax-exempt status was a violation of the automatic stay. ULC argued against application of the Anti–Injunction Act in its opening brief because it anticipated that the United States would raise the issue in its opposition brief. (Appellant's Opening Brief at 32.) The United States did not discuss the Anti–Injunction Act in its opposition brief. Because any federal court must determine whether it has jurisdiction to hear a case, applicability of the Anti–Injunction Act must be considered.

The issue was argued by both parties to the bankruptcy court, (*see* Appellant's Excerpt at 137–38, 152–56, 194–98, 214–20, 242–43), after the United States raised the Anti-Injunction Act in its opposition to ULC's motion in the bankruptcy court, claiming the Anti-Injunction Act prohibited an injunction against the IRS' revocation of tax-exempt status. (Appellant's Excerpt at 138.) ULC replied that it does not seek an injunction against revocation of its tax-exempt status, but rather damages for the alleged violation of the automatic stay caused by the revocation. (Appellant's Excerpt at 198.) The bankruptcy court emphasized in its oral decision on August 30, 1993, "All that's being decided today is whether or not the effort of the Internal Revenue Service by sending out its notice or letter of revocation violated the automatic stay of Section 362." (Appellant's Excerpt at 257.)

■ The Anti-Injunction Act prohibits suits in any court "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). The purpose of this language is "to protect the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974) (quoting *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962)). The Supreme Court has ruled that an action seeking to enjoin the IRS from revoking tax-exempt status, or an action to compel reinstatement of tax-exempt status violates the Anti-Injunction Act because preventing the IRS from revoking tax-exempt status would necessarily preclude the collection of taxes. *Bob Jones,* 416 U.S. at 733, 94 S.Ct. at 2044 (1974) (recognizing that the "clash between the language of the Anti-Injunction Act and the desire of § 501(c)(3) organizations to block the Service from withdrawing [an exemption] has been resolved against the organizations in most cases"); *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). The question here is whether declaring the revocation of tax-ex-

empt status a violation of the automatic stay has the same effect as an injunction against revocation of tax-exempt status.

*Bob Jones* and *Alexander* did not involve taxpayers in bankruptcy, and do not illuminate the interplay between the bankruptcy automatic stay and the Anti-Injunction Act. However, *Bob Jones* extensively analyzed the potential adverse economic effect on a tax-exempt organization which results from revocation of tax-exempt status. Two Courts of Appeals that have considered the interplay of the two Acts reach different results.

In *Bostwick v. United States,* 521 F.2d 741 (8th Cir.1975), the court held the policies underlying the Bankruptcy Act to rehabilitate and give the debtor motivation to lead a full and productive economic life override the government's need to assess and collect taxes during bankruptcy. "We believe that the overriding policy of the Bankruptcy Act is the rehabilitation of the debtor and we are convinced that the Bankruptcy Court must have the power to enjoin assessment and/or collection of taxes in order to protect its jurisdiction...." *Id.* at 744. *Bostwick* involved an injunction to prevent collection of back taxes after the automatic stay had elapsed and a discharge order had been entered. The automatic stay was not at issue, and in any event, was not included in the Bankruptcy Act in its present format until 1978.

*In re Heritage Church and Missionary Fellowship,* 851 F.2d 104 (4th Cir.1988), reaches the opposite conclusion. In *Heritage,* the debtor sought an injunction against revocation of tax-exempt status. The court gave broad reach to the Anti-Injunction Act, and denied an injunction against IRS revocation of tax-exempt status, citing *Bob Jones* to show that an injunction against the revocation of tax-exempt status was a restraint on the assessment of taxes. *Id.* at 105. In contrast, the court found that 11 U.S.C. § 362(a)(6), providing an automatic stay of any "act to collect, assess, or recover" taxes, was narrow and did not apply to tax-exempt status revocation, because revocation of such status is "not an act to collect, assess, or recover a claim against a debtor that arose

before commencement of the case," 11 U.S.C. § 362(a)(6), and is a non-covered preliminary step to assessment. *Heritage Village*, 851 F.2d at 105. The Fourth Circuit held "there is no express provision in the Bankruptcy Code indicating congressional intent that the Code supersede the Anti–Injunction Act." *Id.* (quoting *In re LaSalle Rolling Mills, Inc.*, 832 F.2d 390, 394 (7th Cir.1987)).

Other courts have considered *Bostwick*, but limited it to its specific facts, rather than rejecting its reasoning outright. For example, the lower court in *Heritage*, which was affirmed by the Fourth Circuit, offered a detailed discussion distinguishing its case from the facts in *Bostwick*. 87 B.R. 401 (D.S.C.); *aff'd*, 851 F.2d 104 (4th Cir.1988). The crucial difference was that the proposed revocation would have no immediate effect on the assessment of taxes against the debtor in *Heritage* because the automatic stay provision of § 362(a)(6) would prohibit such assessment. *Id.* at 406. However, the revocation would cause taxes to be assessed against contributors to the debtor because they could no longer claim deductions for their contributions. *Id.* The court found that the bankruptcy court did not have the jurisdiction to enjoin assessment of taxes against the non-debtor contributors, and so it could not enjoin revocation of tax-exempt status. *Id.* at 406–07; *cf. In re American Bicycle Association*, 895 F.2d 1277 (9th Cir.1990) (holding Anti–Injunction Act precludes bankruptcy court from enjoining collection of tax penalty from nondebtor); *A to Z Welding and Manufacturing Co. v. United States*, 803 F.2d 932 (8th Cir.1986) (holding *Bostwick* does not apply to injunctions to restrain assessment of taxes against nondebtors).

Here, it is not apparent that the distinction between *Heritage* and *Bostwick* is applicable. One crucial difference lies in the time period of the revocation. In *Heritage*, the revocation was effective immediately, affecting the current tax returns of contributors to the debtor. Here, the revocation applies only to fiscal years 1982–1985. Because the IRS is prohibited from assessing taxes more than three years after the filing of a tax return for any particular year, 26 U.S.C. § 6501(a), it is unlikely that the revocation will affect the tax liability for 1982–1985 of any contributor to ULC. Accordingly, the revocation might have no effect on the assessment of taxes while the automatic stay is in place, and the Anti–Injunction Act would simply not come into play.

The Bankruptcy Court for the Southern District of California has applied *Bostwick* on at least two occasions. That court has found that it has "jurisdiction to enjoin the IRS from the assessment and collection of taxes despite the anti-injunction statute *if such activity interferes with the orderly administration of the estate or the rehabilitation of the debtor.*" *In re Major Dynamics, Inc.*, 14 B.R. 969, 970 (Bankr.S.D.Cal.1981), *quoted in In re Martin*, 150 B.R. 43 (Bankr.S.D.Cal. 1993). The automatic stay is designed toward that same end: "to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors, Inc. v. Hawaii Automobile Dealers Ass'n*, 997 F.2d 581, 585 (9th Cir.1993).

■ Both the district court and the court of appeals in *Heritage* recognized that the automatic stay prohibits the actual assessment and collection of taxes under § 362(a)(6). Thus, the specific rehabilitation purpose of the Bankruptcy Code takes precedence over the Anti–Injunction Act at least in the specific instances of tax assessment and collection. Under a parity of reasoning, the Bankruptcy Code should also take precedence over the Anti–Injunction Act in this case, because the revocation of tax-exempt status is recognized as a prerequisite to the assessment of taxes. *See Bob Jones*, 416 U.S. at 731–32, 94 S.Ct. at 2043–44. The *Heritage* rationale that the automatic stay does not apply to such prerequisite acts, while the Anti–Injunction Act does, is unpersuasive. To hold that the Anti–Injunction Act prevents a court from enforcing an injunction against revocation of tax-exempt status, but does not prevent it from enforcing an injunction against the actual assessment of taxes because the Bankruptcy Code provisions prevail in that single instance, would promote neither the policies of the Anti–

Injunction Act nor those of the Bankruptcy Code. In a bankruptcy case, the Anti–Injunction Act does not preclude determination of whether the revocation of tax-exempt status violates the automatic stay provision of § 362.

### C. *Automatic Stay Violation*

The filing of a bankruptcy petition under Chapter 11 of the United States Code operates as a stay against any of the activities enumerated under 11 U.S.C. § 362(a) and not excepted under 11 U.S.C. § 362(b).

#### 1. *Violation of § 362(a)*

Though ULC argues that § 362 "as a whole" applies to prohibit the revocation of tax-exempt status, both ULC and the United States focus their arguments specifically on §§ 362(a)(1), (4), and (6). At oral argument, ULC also raised specifically §§ 362(a)(3), and (5). The government contends it has not violated the purpose of the automatic stay provision to halt collection activities outside the bankruptcy proceeding, because it has properly filed its claims in the bankruptcy proceeding and has not sought to create or perfect any tax lien.

Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [Title 11]." Revocation of tax-exempt status is a prerequisite act of assessment of a tax. *See Bob Jones,* 416 U.S. at 731–32, 94 S.Ct. at 2043–44. *In re Heritage Village Church & Missionary Fellowship* holds that revocation is not an act of assessment. 87 B.R. 401, 403 (D.S.C.1988), *aff'd,* 851 F.2d 104 (4th Cir. 1988). Simply because the Anti–Injunction Act "applies not only to assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection," *see Blech v. United States,* 595 F.2d 462, 466 (9th Cir. 1979), does not make revocation an "act to collect, assess, or recover a claim [that arose pre-petition]." *Heritage Village,* 87 B.R. at 403. Revocation of tax-exempt status is not a formal distinct act that has the characteristics or consequences of collection, assessment, or recovery of taxes. Section 362(a)(6) does not apply to the revocation.

Section 362(a)(4) prohibits "any act to create, perfect, or enforce a lien against property of the estate." A tax lien upon property arises only after the IRS assesses a tax deficiency and makes a demand for payment. 26 U.S.C. § 6321. The lien is created immediately upon assessment. 26 U.S.C. § 6322. Enforcement of a tax lien would require a levy or judicial foreclosure. *See* 26 U.S.C. § 6331(a); 26 U.S.C. § 7403. There has been no action to create or enforce a tax lien because there has been no assessment of taxes nor any levy or judicial foreclosure proceedings instituted. Though the court has held that revocation of tax-exempt status is a prerequisite act of assessment, it is unclear whether it is also a prerequisite act to create a lien. Section 362(a)(4) stays lien creation against property of the estate. The United States has disclaimed that it sought the status revocation to create a lien and does not contend it is entitled to secured creditor status for pre-petition tax claims arising from the revocation. Under these facts, § 362(a)(4) does not stay the revocation.

Section 362(a)(5) stays "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." Under the facts here, the interpretation of § 362(a)(5) is essentially the same as under § 362(a)(4). The IRS has not sought a lien or secured priority based on a claim arising before the filing of the petition. The stay of § 362(a)(5) does not bar the revocation.

Section § 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." "The purpose of this provision is to prevent dismemberment of the estate." S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* U.S.C.C.A.N. 5787, 5836. Tax-exempt status is not a property right. *Heritage Village,* 87 B.R. at 405. Though the case that *Heritage Village* relied on in reaching this conclusion, *In re Braniff Airways, Inc.,* 700 F.2d 935, 942 (5th Cir.1983) (holding that landing slots allocated to airline by FAA were not proper-

ty of debtor airline's estate but merely rules modifying airline's use of property), has been criticized, the *Heritage Village* holding is not weakened.

 Some courts have disagreed with *Braniff,* concluding that government regulation of the use of property through licenses or permits does not negate the existence of a property right in the debtor. *See, e.g., In re Horizon Air, Inc.,* 156 B.R. 369, 376–77 (N.D.N.Y.1993); *In re Ridgely Communications, Inc.,* 139 B.R. 374, 377–78 (Bankr. D.Md.1992); *In re Beker Indus. Corp.,* 57 B.R. 611, 622 (Bankr.S.D.N.Y.1986). Tax-exempt status is not a license or permit for the use of property, as were the interests contemplated in the cases critical of *Braniff* and in *Braniff* itself. It is simply a classification for income and expense imposed by the IRS entitling the taxpayer to certain advantageous tax treatment. If the status is not property, its revocation is not an act to obtain possession of property of or from the estate. *Cf. Jordan v. Randolph Mills, Inc.,* 716 F.2d 1053, 1056 (4th Cir.1983). The possibility that revocation will affect the recharacterization of ULC income, which may be subject to assessment for unpaid taxes at some time in the future, i.e. by paving the way for a lien and collection of taxes, is not sufficient to constitute a violation of § 362(a)(3), particularly when no specific property of ULC is identified as the subject of a request for possession or control. *See Board of Governors v. MCorp Financial, Inc.,* 502 U.S. 32, 40, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991).

 Finally, § 362(a)(1) provides a prohibition against:

"the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

The Ninth Circuit has interpreted this provision broadly, holding that the entire assessment procedure is an administrative proceeding that is stayed by § 362(a)(1). *Delpit v.*

*Commissioner Internal Revenue Service,* 18 F.3d 768, 770–71 (9th Cir.1994). *Delpit* held that the proceeding began with an audit of the taxpayer and continued through litigation of tax liability in the federal courts. *Id.* at 770. Whether revocation of tax-exempt status was also a part of this administrative proceeding was not at issue in *Delpit.* The reasoning of *Delpit* is instructive. Each step in the administrative process leading to assessment and collection of additional taxes, including the revocation of tax-exempt status which begins the process, is the commencement or continuation of an administrative proceeding or other action to recover a claim against the debtor that arose before the commencement of the bankruptcy. Revocation of tax-exempt status violates the automatic stay provision of § 362(a)(1).

2. *Exceptions to the Automatic Stay*

a. *§ 362(b)(4)*

 Section 362(b)(4) excepts from the automatic stay of § 362(a)(1) "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4). Examples of such actions are "suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law." H.R.Rep. 595, 95th Cong., 1st Sess. 342–43 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 51–52 (1978), *reprinted in* U.S.C.C.A.N. 5787, 5837, 5838, 5963, 6299. Actions which conflict directly "with the control of the res or property of the bankruptcy court" are not excepted from the stay. *Heritage Village,* 87 B.R. at 404; *Missouri v. United States Bankruptcy Court,* 647 F.2d 768, 776 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). Section 362(b)(4) does not apply to actions pursued to advance a "pecuniary interest" of the governmental unit or its citizens. *In re Thomassen,* 15 B.R. 907, 909 (9th Cir. BAP 1981); *In re Golden Plan of California, Inc.,* 37 B.R. 167, 170 n. 2 (Bankr.E.D.Cal.1984).

The district court in *Heritage Village* concluded that revocation of tax-exempt status

was excepted from the automatic stay because it served a police or regulatory function. 87 B.R. at 404. The court found that the regulation and review of tax-exempt organizations "promotes the public welfare by assuring donors that their contributions will qualify for a charitable deduction and that the donee organization is a charitable one." *Id.* This activity may be characterized as a type of fraud detection, assuring potential donors that the organization will not use their contributions for personal profit, but for the charitable purposes encouraged by law. The Ninth Circuit has recognized that the IRS, particularly the Exempt Organizations division which reviews tax-exempt status, exercises police powers. In an action concerning the Freedom of Information Act, the court found that the Exempt Organization division of the IRS "performs a law enforcement function by enforcing the provisions of the federal tax code that relate to qualification for tax exempt status." *Church of Scientology Int'l v. United States Internal Revenue Serv.*, 995 F.2d 916, 919 (9th Cir. 1993).

Here, the IRS revoked tax-exempt status for ULC because, *inter alia,* the church's earnings had inured to the benefit of private individuals. Though admittedly the revocation of tax-exempt status inevitably affects the pecuniary interests of United States citizens, all fraud prevention activities are linked to such pecuniary concerns. This does not deny their police function. Revocation of tax-exempt status implements a police power function regulating the government's interest in advancing the policies underlying the charitable purposes exemptions provided by Congress.

ULC argues that § 362(b)(4) cannot be applicable in this case because it is indistinguishable from the situations in *In re Golden Plan of California*, 37 B.R. 167 (Bankr. E.D.Cal.1984), and *In re Pizza of Hawaii,* 12 B.R. 796 (Bankr.D.Haw.1981). These two cases held that the revocation of a corporate charter and withholding of renewal of a liquor license, respectively, for failure to pay taxes were not excepted from the automatic

stay under § 362(b)(4) because such actions were for pecuniary purposes. *Golden Plan,* 37 B.R. at 170 n. 2; *Pizza of Hawaii,* 12 B.R. at 798–99. These cases are distinguishable from the present case, however, because the government in those cases acted solely to enforce its pecuniary interest in collecting taxes. Here, the IRS has revoked tax-exempt status, not with the sole aim to enforce the collection of taxes, but with the goal of assuring that funds not be used for noncharitable purposes and to protect the public from fraudulent charitable solicitations.

Finally, ULC argues that § 362(b)(4) is only applicable when the action violates the automatic stay provision of § 362(a)(1) and no other provisions of § 362(a). Thus, ULC asserts, if the court finds that the revocation violated any other provision, such as §§ 362(a)(3), (4), (5), or (6), the exception under § 362(b)(4) does not apply. While it is true that § 362(b)(4) limits its application to violations "under subsection (a)(1)," ULC's position is untenable. As the Ninth Circuit has held, and as ULC urges, the provisions of § 362(a) overlap. *Delpit,* 18 F.3d at 772. In particular, *Delpit's* expansive reading of § 362(a)(1) creates substantial overlap between it and several other automatic stay provisions. To say that § 362(b)(4) applies only to those actions which fall solely under § 362(a)(1) rejects the integrative reading of § 362(a) which ULC endorses. The appropriate interpretation is that any action which falls under § 362(a)(1) is excepted if the requirements of § 362(b)(4) are met. However, even if ULC's contention is accepted, here, the only provision of § 362(a) that applies to the revocation, (a)(1) is expressly excepted by (b)(4). The Bankruptcy Court correctly concluded that the automatic stay does not bar revocation of ULC's tax-exempt status.

b. *§ 362(b)(9)*

Section 362(b)(9) excepts from the automatic stay "the issuance to the debtor by a governmental unit of a notice of tax deficiency."[3] As the Ninth Circuit has ob-

---

3. This is the text of the statute as it stood on July 20, 1993, when this action commenced. The

current § 362(b)(9) is more comprehensive, excepting from the automatic stay:

served, § 362(b)(9) simply "preserves the [IRS] Commissioner's claim against the debtor." *Delpit,* 18 F.3d at 772. It also enables a debtor to litigate in the Tax Court, where jurisdiction is based on a taxpayer's prior receipt of a notice of deficiency. 26 U.S.C. § 6214(a); *Matter of Community Hospital of Rockland County,* 15 B.R. 785, 790 (Bankr. S.D.N.Y.1981).

There is little case law construing § 362(b)(9) more broadly than its plain language. The United States first cites *H & H Beverage Distributors, Inc. v. Dep't of Revenue,* 850 F.2d 165 (3rd Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988), to support the proposition that actions "integral to issuance of a statutory notice of deficiency" fall under the provisions of (b)(9). However, *H & H Beverage* held only that a state tax "notice of audit assessment" was functionally equivalent to what is termed a notice of deficiency by the IRS, and thus was covered by (b)(9). *Id.* at 169. Whether something is the "functional equivalent" of a notice of tax deficiency is not the same as other documents or procedures "integral" to the issuance of a notice of tax deficiency. The government's construction of *H & H Beverage* is unsupported.

At least one other court has also refused to extend the application of § 362(b)(9) beyond the discrete act of issuance of a notice of tax deficiency or its functional equivalent. In *In re Apex Oil Co.,* 131 B.R. 712, 715 (E.D.Mo. 1991), the court could not find that the assessment of import duties was the functional equivalent of a notice of tax deficiency, and thus refused to except the assessment from the automatic stay under § 362(b)(9).

"(A) an audit by a governmental unit to determine tax liability;
(B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;
(C) a demand for tax returns; or
(D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but, any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor)."

The government offers *In re Hardy,* 39 B.R. 64 (Bankr.E.D.Pa.1984), to support its expansive reading of (b)(9). *Hardy* found that certain form letters sent to the debtor prior to the notice of tax deficiency were necessary precursors to the notice, and thus came within the scope of (b)(9). *Id.* at 66. The letters informed the debtor that the IRS believed an adjustment should be made to the debtor's taxes and requested that the debtor consent to an extension of the statute of limitations for assessment of tax. *Id.* at 65 nn. 3, 4.

■ In *Hardy,* the form letters were necessary prerequisites, under IRS procedures, to the issuance of the final notice of deficiency. Here, the revocation of tax-exempt status is not a legal precondition to the issuance of a notice of deficiency, nor is it the functional equivalent of such notice. As a practical matter, the IRS must revoke an organization's tax-exempt status in order to issue it a notice of tax deficiency, but the two actions are not part of an integrated procedure as were the letters and notice in *Hardy.* In the absence of authority interpreting § 362(b)(9) to include all necessary acts preliminary to the issuance of a notice of tax deficiency, the provision must be construed to be limited by its express language.

■ The effect of such a holding will limit the application of (b)(9) to cases where the prerequisite acts to the issuance of a notice of tax deficiency have been made before the debtor files its bankruptcy petition. In those cases, the IRS will be in a position to simply issue a post-petition notice of deficiency, an act expressly excepted from the automatic stay by § 362(b)(9). Perhaps to avoid such a

The legislative history to the 1994 amendment of section (b)(9) notes that "it expands the tax exception to the automatic stay.... This section will lift the automatic stay as it applies to a ... demand for tax returns ... or the making of certain assessments of tax and issuance of a notice and demand for payment for such assessment." H.R.Rep. No. 835, 103rd Cong., 2d Sess. 43 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3352. The analysis in this opinion would be different if the new provisions were applicable to this case.

narrow application of (b)(9), Congress amended the provision in 1994 to expand its application to audits and assessments of tax liability. The amendment to (b)(9) supports the inference that the scope of the pre–1994 law was limited to its express terms. In this case, where the pre–1994 statute applies, there is no authority to expand the interpretation of § 362(b)(9) and the exception does not operate to avoid the automatic stay.

The revocation is excepted from the automatic stay under § 362(b)(4). The bankruptcy court's judgment is AFFIRMED.

### D. *Stay of Order Pending Appeal*

The bankruptcy judge's decision is reviewed for abuse of discretion. The bankruptcy judge (Judge Eisen) denied the request for a stay pending appeal in his order of November 9, 1993. The order does not state the reasons for denial, nor does the transcript of the hearing at which the judge orally denied the stay reveal any findings or explanation for the ruling. ULC asserts that the bankruptcy court again addressed the issue of a stay on May 24, 1995 when the bankruptcy judge was unwilling to revisit the bankruptcy court's previous decision. It is Judge Eisen's decision of November 9, 1993 that must be reviewed. Judge Eisen did not articulate the basis for denial of the stay pending appeal. Denial of a motion to stay enforcement of an order pending appeal is reviewed for abuse of discretion. *In re Wymer*, 5 B.R. 802, 807 (9th Cir. BAP 1980).

An appellant seeking a discretionary stay pending appeal under Bankruptcy Rule 8005 must prove:

(1) appellant is likely to succeed on the merits of the appeal;

(2) appellant will suffer irreparable injury;

(3) no substantial harm will come to appellee;

(4) the stay will do no harm to the public interest.

*In re Byrd*, 172 B.R. 970, 974 (W.D.Wash. 1994); *In re Wymer*, 5 B.R. 802, 806 (9th Cir. BAP 1980).

It is unclear that ULC is likely to succeed on the merits of its appeal. The decision of the bankruptcy court regarding the revocation of tax-exempt status is a separate action from the order to file income tax returns.

ULC argues that the IRS had no authority to revoke its tax-exempt status and to demand the filing of tax returns because the district court, not the IRS, granted ULC its tax-exempt status in the first place. Therefore, ULC asserts, the separation of powers doctrine requires the IRS to seek approval from the district court before revoking ULC's tax-exempt status in this case. ULC argues that collateral estoppel and res judicata bind the IRS to the district court's earlier decision to grant tax-exempt status until the district court makes a new determination that changed circumstances warrant revocation of such status. As ULC correctly argues, collateral estoppel is applicable even where some facts differ in the two cases at issue, if "the differing facts were not 'essential to the judgment' or 'of controlling significance' in the first case." *Starker v. United States*, 602 F.2d 1341, 1346 (9th Cir.1979).

The district court ordered that ULC was entitled to tax-exempt status in *Universal Life Church, Inc. v. United States*, 372 F.Supp. 770 (E.D.Cal.1974). The court's decision was based solely on its finding that ULC's ordination of ministers, its granting of church charters, and its issuance of Honorary Doctor of Divinity titles were not substantial activities which did not further any religious purpose. *Id.* at 776. In contrast, the IRS decision to revoke tax-exempt status for fiscal years 1982–1985 was based on at least six distinct and different grounds, including that the net earnings of ULC inured to the benefit of private individuals, that ULC provided advice to individuals on the purported tax benefits available to ministers of ULC, and that ULC had furthered a substantial nonexempt purpose in administering and operating the receipts and disbursements program to its members and congregations. (Appellant's Excerpt at 40.) These factors were found to exist during the 1982–1985 time period, approximately eight to ten years after the court's decision on tax-exempt status. Because the dispositive facts in each case were different, collateral estop-

pel does not bar the IRS from revoking ULC's tax-exempt status for the time period 1982–1985.

Nor is the initial forum for determination of tax-exempt status the district court. The district court gained jurisdiction over the matter in 1974 when ULC challenged payment of taxes in a refund suit, claiming that the IRS had erroneously denied tax-exempt status. *Universal Life Church,* 372 F.Supp. at 770–71. However, the initial determination of tax status was with the IRS. ULC has not provided authority that the IRS does not have initial jurisdiction to revoke tax-exempt status and then order the filing of tax returns.

 Second, ULC has not shown that it will suffer irreparable harm. ULC continues to assert that the filing of tax returns will be an admission of tax liability. ULC's citations to *United States v. Dinnell,* 428 F.Supp. 205, 208 (D.Ariz.1977), *aff'd,* 568 F.2d 779 (9th Cir.1978), and *United States v. Hornstein,* 176 F.2d 217, 220 (7th Cir.1949), do not support this contention. These two cases stand only for the proposition that facts asserted in a tax return, e.g. the costs of goods sold in a particular year, are admissions as to those facts, and create a rebuttable presumption that such facts are true. However, these cases do not hold that the act of filing a tax return is an admission that one owes taxes. If that were the case, there would be no procedure for obtaining refunds after filing a tax return.[4]

ULC has also failed to show that the revocation will cause irreparable harm to the level of contributions ULC receives to support itself. The revocation concerns only three past years. It does not concern present tax status and thus should not affect current contributions to ULC.

ULC has failed to make the requisite showing on the first two elements. Accordingly, the bankruptcy court's order is affirmed and the motion to stay pending appeal is DENIED.

---

4. The court acknowledges that ULC has elected to pursue its remedy under 11 U.S.C. § 505 in the bankruptcy court rather than seek a refund under Title 26. However, this does not change

E. *Request for Briefing Schedule*

This request appears to be moot.

*CONCLUSION*

For the reasons specified above, the orders of the bankruptcy court finding no violation of the automatic stay and denying a stay pending appeal are AFFIRMED.

SO ORDERED.

the fact that the filing of tax returns is only an admission of the underlying facts asserted in the return, and not an admission of tax liability or tax status.